HOVEY *et al.*, plaintiffs in error, *vs.* HOLCOMB *et al.*, defendants in error.

*Error to Cook County Court.*

All trusts in this state, except resulting trusts, must be evidenced or created by writing.

If one honestly conveys property, by an absolute deed, to another, believing that it will be reconveyed or transferred, as the first grantor may direct, without intending to injure his creditors by such conveyance, and where they would not be injured if the real purposes of the grantor should be carried out, as intended by him, such conveyance is not fraudulent, as to creditors.

To set aside a conveyance, as fraudulent, the bill should contain sufficient averments, showing the manner of the fraud.

Where a parol trust is set up in a bill, and the statute of frauds is interposed, its effect cannot be avoided.

This was a bill in chancery, filed by the defendants in error, setting forth that Gerry Bates was indebted to them, by virtue of a judgment obtained against him, in the sum of $2,450; that Bates agreed with John L. Hovey, that Hovey should come to Illinois, and, with money to be furnished by Bates, should enter lands and make improvements, for their joint benefit—they being brothers-in-law; that Hovey came, and, with his family, settled at Cottage Hill; that Bates and Hovey being embarrassed, the lands were purchased in the name of John Addison Warner, for the use and benefit of Hovey and Bates; that in February, 1844, John L. Hovey entered eighty acres of land in the name of Darius A. Hovey, who, at his request, conveyed the same to one Scofield, and Scofield to the said Warner; that divers lands were purchased by J. L. Hovey, in the name of Warner, with the money of Bates, in trust, for the joint benefit of Bates and J. L. Hovey, and that improvements had been made, &c.; that Bates afterwards came, with his family, to Illinois; that he and J. L. Hovey disagreed about the dividing of the property, and

that J. L. Hovey called in Almon Hovey, to aid him in the matter; that A. Hovey purchased claims against J. L. Hovey and Bates, and prosecuted the same, and also filed his bill in chancery against Bates, J. L. Hovey and Warner, and issued executions against the land held by Warner, in trust, for Bates and J. L. Hovey; that Warner, J. L. Hovey and Bates agreed to convey the land to A. Hovey, in trust, upon the terms and conditions expressed in the opinion of the Court. The bill prayed that the conveyances made to A. Hovey and others be set aside, and that a new trustee should be appointed, and the premises be sold by him under the direction of the Court, and the money realized therefrom be distributed in a particular manner prayed for in the bill, and that the interest of Bates should be made subject to the execution issued upon the judgment obtained by the complainants against him; and that all others be enjoined from conveying said land, &c.

At the May term, 1849, of the Cook County Court, Hugh T. Dickey, Judge, a decree was entered in favor of the complainants. The respondents sued out this writ of error.

G. Spring, P. Ballingall and J. C. Champlin, for plaintiffs in error.

J. M. Wilson and J. H. Collins, for defendants in error.

Opinion by Mr. Justice Caton:

The complainants were judgment creditors of Bates, and had levied their execution upon the premises described in the bill, and known as the Cottage Hill farm. With the exception of one lot, the land had been entered in the name of Warner, with the funds of and in trust for Bates and John L. Hovey. One lot had been entered in the name of another, but had been transferred to Warner, upon the same trust, as is alleged. On the 28th of September, 1846, Warner conveyed the premises to Almon Hovey, the *cestui que trusts* and their wives joining in the conveyance. Afterwards, Almon Hovey conveyed to Darius A. Hovey, who then conveyed to Lamb. Almon Hovey had purchased certain demands against Bates and also against John L. Hovey, at a large discount, and had obtained judgments upon those demands. The bill, after showing that Warner held the title,

in trust, for Bates and John L. Hovey, and that differences had arisen between the *cestui que trusts*, which rendered it desirable that their interests in the premises should be divided; and after showing that Almon Hovey had purchased the demands and obtained judgments against Bates and John L. Hovey, proceeds to show the conveyance of the premises to Almon Hovey, as follows: "And your orators further show unto your honor, that they have been informed, and believe and so charge the fact to be, that on or about the said 28th day of September, A. D. 1846, the said John Addison Warner, John L. Hovey and Gerry Bates, to avoid further expenses, to heal difficulties between kinsmen and friends, to provide for the payment of certain debts, and to adjust their several matters upon an equitable basis, agreed to convey the whole of said premises to the said Almon Hovey, in trust. (The said John Addison Warner, John L. Hovey and Gerry Bates, then and there having perfect confidence in the integrity, responsibility and fidelity of the said Almon Hovey, as such trustee.) And the said John Addison Warner, and the said John L. Hovey and his wife, and the said Gerry Bates and his wife, then and there, to wit, on the said 28th of September, in the year last aforesaid, at Cottage Hill, in the county of Du Page aforesaid, did convey to the said Almon Hovey, his heirs and assigns, forever, the whole of the said premises, by a deed, absolute and unconditional on its face, but in truth and in fact, by a deed of trust, to pay certain debts ; to pay the costs which had accrued thus far in the several suits hereinbefore mentioned ; to pay said trustee for his services and expenses, and indemnifying him against responsibilities before that time incurred ; and, lastly, to divide the same between the said John L. Hovey and Gerry Bates, according to their respective interests therein, and as justice should require—it being then and there conceded that the said John Addison Warner had no other interest in the said premises than as a mere naked trustee." And after stating what debts and costs were to be paid, the bill further proceeds : "The said Almon Hovey agreed to accept the said deed on the above conditions, and agreed to do what was right in the premises ; that no money was paid by the said Almon Hovey, at the time, except for acknowledging the deed and recording the same, a few days thereafter." The bill then states the subsequent

conveyances, by which the title became vested in Lamb, averring a knowledge of the trust in all of the parties.

It was urged upon the argument, that if the averments in the bill do not show that the conveyance to Almon Hovey was fraudulent as to creditors, then that conveyance may be treated as a mortgage, to secure the judgments which he held against Bates and John L. Hovey. But the statements in the bill do not show that that deed was given as a security for those judgments, and to cease to operate when they should be satisfied. Those judgments were already liens upon the interests which the defendants in those judgments had in the premises. The bill shows that it was the design of all parties that the absolute title should pass by that conveyance, for the purpose of providing for the payment of those judgments, and not merely for the purpose of securing them. The grantee needed not the aid of any Court to enable him to pass the absolute and indefeasible title to the premises. The bill shows, that he took, not as mortgagee, but as trustee. If there were no distinction between a mortgagee and a trustee, where the object of the trust is to provide for the payment of debts, then there might be some reason for saying that here was some appearance of a mortgage. But there is a very wide distinction, and this case very fitly illustrates it. Equity may allow an apparently absolute deed to be shown to be a mortgage, by a parol defeasance, while by the fourth section of our statute of frauds, all trusts shall be created or evidenced by writing, except resulting trusts, or else they are void. If Hovey was a mortgagee, that may be shown by parol; if he was a trustee, that can only be established by written evidence. The bill makes no pretence of a mortgage; and, unless the one is the other, then he was a trustee and not a mortgagee. Numerous instances might be referred to, showing the broad distinction between the two, but as they will readily present themselves to every lawyer, we do not think it necessary to pursue the discussion. There is no pretence of a mortgage in the bill, nor do the facts stated show that the conveyance was intended as a mortgage.

We entertain no doubt, then, that if the complainants in this case succeed at all, it must be upon the ground that these conveyances were fraudulent, as to creditors. But all idea of fraud in the conveyance from Warner, Bates and John L. Hovey to

Almon Hovey, is expressly repudiated by the bill, in the most explicit and unequivocal terms; and whatever proof there may be in the record, tending to show that that conveyance was, in fact, fraudulent, as to creditors, so far from supporting the record, is in direct opposition to it. The bill shows, that that transaction was for honest and praiseworthy purposes, and without any design to hinder and delay any of the creditors of Bates improperly. While the complainants thus characterize the transaction in their bill, they cannot give it a different character in their proof, nor ask for a decree based upon a different state of case. The bill shows a clear case of parol trust, not resulting or arising by operation of law, but created by a parol agreement of the parties, in opposition to the express terms of the deed. It shows a case of misplaced confidence by the grantors, unmixed with any fraudulent design on their part. If no fraud was intended, then no fraud was perpetrated. If one honestly conveys property, by an absolute deed, to another, whom he supposes to be his friend, really believing that he will reconvey or transfer it to another, as the grantor may direct, without reflecting at the time that he is indebted or supposing that his creditors can be affected by the conveyance, and where they would not be injured if the real purposes of the grantor were carried out by the grantee, according to the understanding of the parties, such conveyance is not fraudulent, as to creditors. There is wanting that essential ingredient of fraud, a design to hinder and delay creditors. They may, it is true, suffer by the misplaced confidence of their debtor, but that is as much their misfortune as if he had honestly sold his property for half its value, and received his pay. It is no harder for the creditor to suffer from the credulity of his debtor than from his folly.

But it was insisted, that by a subsequent clause of the bill, fraud is sufficiently averred. After giving a history of the several conveyances, as well the one above stated as those from Almon Hovey to Darius A. Hovey, and from him to Lamb, with some statements showing that the two last conveyances were designed to defraud Bates and J. L. Hovey, the bill proceeds: "And your orators further show unto your honor, that the doings and proceedings of the several parties hereinbefore mentioned, and especially the doings and proceedings of the said Almon Hovey and Darius A. Hovey, and the said Augustus C. Lamb,

so far as he has acted therein, if at all, are fraudulent and corrupt, and tend greatly to your orators' injury." Previous to this, there are but two allegations of fraud in the bill. The first is, that Almon Hovey fraudulently refused to execute the trust which he had assumed; and the second is, that it was fraudulently represented that Lamb was a resident of Pennsylvania, whereas, in truth, he was a resident of New York. The first is the averment of a fraudulent design against the *cestui que trusts* by the trustee, in refusing to execute the parol trust; and the second is, of a fraudulent representation of a fact, which is entirely immaterial. The material averment of fraud, if contained in this bill at all, is to be found in the passage last quoted. Fraud must be made out, by showing fraudulent acts, or a fraudulent intent. Where the acts are admitted to be *bona fide*, and the intent honest, the conclusion, that they were fraudulent and tend to the injury of the complainants, does not make them so. It may, sometimes, be a sufficient averment of fraud to say, that a certain specified act was fraudulently done, or that it was done, and that it was fraudulent, without particularly showing how it was fraudulent—although that general mode of pleading ought not to be encouraged; or, fraud may be sufficiently averred, by setting forth the particular manner in which the act was done, and the particular end and design to be accomplished. Where the facts thus stated show that a fraud was designed and perpetrated, that may be a sufficient averment of the fraud, although the pleader does not state the conclusion which the law itself will draw, that the act was fraudulent. This is the most that can be made out of the cases referred to by the complainants' counsel. But where the pleader states an act, which he admits was honest, assigning honest motives for the act, and detailing circumstances showing that it was honest, it is a solecism for him afterwards to say that it was fraudulent. Undoubtedly there are certain acts which the law will intend were fraudulent, irrespective of the motives of the parties, in consequence of the effect which they would produce upon the rights of third parties, acquired subsequently, in ignorance of the acts done, as in the case of the sale of chattels, where there is no delivery of possession; but this principle has no application to a case like the one before us. The trust set up in the bill existed only in

84

parol, and to this the statute of frauds is interposed, and upon such a trust its effect cannot be avoided.

The decree of the Cook County Court is reversed, with costs, and the suit remanded, with leave to the complainants to amend their bill, as they shall be advised.

*Decree reversed.*