Seaman et ux. *v.* Cook.

JOHN F. SEAMAN AND WIFE, Plaintiffs in Error, *v.* EDWARD COOK, Defendant in Error.

ERROR TO COOK.

Where an intestate left a widow, one son, and three daughters, and the widow administered on his estate, and managed the whole of it and its proceeds for a period of thirty-seven years, investing and reinvesting the proceeds, at first in the joint names of herself and children, and afterwards, with their assent and knowledge, in her own individual name, and they all lived together, the widow furnishing all the supplies for the family: —

*Held,* that the widow was to be considered in all these investments as acting as trustee for those interested in the property purchased in her own name, and the law will raise a resulting trust to the owners in the property so purchased.

And where the husband of one of the daughters, who had purchased real estate in this State, afterwards sold and conveyed the same to the said widow, for money received by her out of the rents of property, the title of which was in her name, though purchased by her out of the joint funds aforesaid: —

*Held,* that there was a resulting trust in the said property so sold, in the husband in right of his wife, to the amount of her share in said consideration money.

The laws of New York, where said intestate died, examined as to uses and resulting trusts, and that, by those laws, no resulting trust would arise to the parties, but would arise in favor of creditors of the party praying the consideration for real estate, the title of which was taken in the name of another.

THIS was an attachment suit sued out of the Cook County Court of Common Pleas, returnable at the February term, 1853, by the appellee against the appellant, and levied upon the land in question; and after obtaining judgment therein against said Seaman, filed his bill on the chancery side thereof, to subject

Seaman's interest in the land attached to sale for the satisfaction of said judgment.

The facts sufficiently appear in the opinion. Decree entered, settling the interest of Seaman, and ordering a sale thereof, in satisfaction of said judgment. Seaman prosecuted his writ of error.

ARNOLD & LAY, and BLACKWELL & BECKWITH, for plaintiffs in error.

JUDD and WILSON, for defendant in error.

SCATES, J. Cook sued out an attachment, which was levied on the land in question ; and after obtaining a judgment against Seaman, filed this bill, to subject Seaman's interest in the land to sale, for the satisfaction of the judgment.

The question presented is, Whether Seaman has any interest in the land upon a resulting trust; and if so, its extent.

Thomas Drake died in New York City, in 1800, leaving real and personal estate there worth $23,000, and Susannah, his widow, a son, and three daughters.

The widow administered, and managed the whole estate and its proceeds for thirty-seven years, investing and reinvesting the proceeds in real estate and securities, in the joint names of herself and children. During their lives, the children lived with their mother until her death, after this suit was instituted. She survived all the children but Ann, the wife of Seaman, and during her lifetime kept house and supplied the family with every necessary, both provision and clothing. The son and one daughter died before 1837 ; when the survivors made a deed of partition, as it is called in the pleadings, though it is merely a declaration of their respective interests, in effect; and they continued to hold in common an undivided third. In 1837, Seaman intermarried with Ann, when he became a member of the same household, in which the same management and control of the mother continued, as before, and in like management of all the property. But after this period, she invested, with the knowledge of the others, the proceeds of the joint property, in stocks, and in lots on West and Water streets, in New York city, in her own name. One of these investments was in the stock of the Manhattan Co.

Seaman failed in business, and became insolvent. He afterwards purchased, in 1844, the property in question, lying in Chicago, and gave his notes for $2,200, in part payment. The land was subject to a mortgage for $3,750, which was to be paid off by his vendor.

Seaman and wife sold this land to Susannah, the mother, for $7,000, and conveyed it to her, in her own name.

The bill charges, that the consideration of $7,000 paid by Susannah, was paid out of moneys belonging in equal parts to Seaman and wife, Susannah, and to Susan, the other surviving daughter. That $2,500 of the amount was derived from a sale of the Manhattan stock; $3,000 from the rents of the West and Water street lots; and $1,500 from other rents of the joint property. That she also paid off the notes given by Seaman for the purchase-money for $2,200, out of moneys arising from rents, &c., of other real estate.

The answer admits these facts, but does not specify the amount derived from each of these sources. Susannah gave her notes for part of the purchase-money of said land; but they were afterwards paid out of moneys derived as before stated.

Before the hearing, Susannah, the mother, and Susan, the daughter, died, each having made a will, bequeathing and devising all their respective estates and property to the sole and separate use of Ann Seaman. The parties all lived in New York, where all the property was situated, except the land in question. Cook was not a creditor at the time of the purchase of this land.

Do these facts raise a resulting trust to Seaman? and if so, for what interest? For if Susannah acquired by this purchase a sole estate, it has passed by her devise to Ann Seaman, as a separate estate, and in which her husband is not even entitled to an estate by the curtesy.

Our statute of frauds provides, that all declarations or creations of trusts or confidences of any lands, tenements, or hereditaments, shall be manifested and proved by some writing, signed by the party who is, by law, enabled to declare such trust, or by his last will, in writing; or else they shall be utterly void, and of no effect: provided, that resulting trust, or trusts, created by construction, implication, or operation of law, need not be in writing, and the same may be proved by parol. Rev. Stat. 45, p. 259, § 4.

The facts in this case show a resulting trust under this act, to Seaman, to the extent and in the proportion of his interest in the purchase-money. Parol evidence is admissible to show a resulting trust; but it is inadmissible to show a contract for a trust; and so ruled in Hovey et al. *v.* Holcomb et al., 11 Ill. R. 660, and Perry *v.* McHenry, 13 Ib. 237. This being of the former character, the admissions in the answers fully prove the sources whence the purchase-moneys were derived, and presents

the question of their ownership in whole or in part, which must determine the quantum of the estate resulting to Seaman.

In determining this question, we must look to the condition of the parties in New York, and the situation, in part, at least, of the property there. But I need not examine the vexed question of the law of the domicil in relation to contracts affecting the right or title to personalty. But I will, under the facts of this case, treat it as transitory, and when it is brought within the jurisdiction of our laws for investment, they must govern and determine the question of title and ownership.

Mrs. Drake, in 1800, came into the possession, control, and management of this estate, as administratrix, in a trust character, as *quasi* trustee.

When this trust ended, if ever before her death, does not appear. She continued this possession, control, and management uninterruptedly for a period of forty-eight or forty-nine years, long after the children became of age, and after Ann's intermarriage, and until the death of all her children, except Ann, and her own death. And during all this period she provided for all their wants, out of the common fund, and bought, sold, invested, and reinvested as she thought proper. Until 1837 the titles were taken in their joint names, and afterwards some, if not all, were taken in her own. The reason of this change is not apparent to us. There was no division made by the deed of 1837, nor does it appear that the rights, titles, or interests of the parties were in the least changed by it. The only changes that appear to have been made, were the addition of Seaman to the family circle, by his intermarriage with Ann, and in making new investments in the name of Susannah alone. These facts will not divest her of her trust character. She still sustains a fiduciary relation in the possession, control, and management of the property. Any application or appropriation of these funds, to her sole use and benefit, would be, by our law, a violation of her trust; and it will not lie in her mouth, or avail to allege a breach of confidence, and a violation of her trust and duty, as the ground of title to her principal's estate. For if these investments were not made for the use of the principals, but her own, it was a breach of trust, a misapplication of their money, and a violation of her duty. This, the law will not presume to have been the intention, but will treat it as a resulting trust to the owners of the money. 11 Ill. 660 ; 13 Ill. 237 ; Jackson *v.* Matsdorf, 11 John. R. 91 ; Jackson *v.* Seely & Morse, 16 John. R. 196 ; Botsford *v.* Burr, 2 John. Ch. R. 405 ; 2 Story, Eq. Juris. § 1210.

But if it is, when so invested and claimed as the sole prop-

erty of the trustee or agent, to be treated as a breach of trust, the *cestui que trust* can either follow it and claim that in which it has been invested, or hold the trustee personally responsible. Oliver et al. *v.* Pratt, 3 How. U. S. R. 401; 2 Story, Eq. § 1210; 4 Kent, Com. 305, 306.

And this would also be the effect of a resulting trust where only part of the consideration was the money of another; a trust would result in proportion. 4 Kent, Com. 306; Powell and Wife *v.* Monson and Brimfield Man. Co., 3 Mason, Cir. C. R. 364; Wray *v.* Steel, 2 Ves. & Beam. R. 389; Brothers *v.* Porter et al., 6 B. Mon. R. 106; Ross *v.* Hegeman, 2 Edw. Ch. R. 373.

The whole record very strongly shows, that Susannah had no individual undivided property, unless the West and Water street lots became so by operation of the statute of New York, on her taking the titles in her own name with the knowledge of the other owners. See Rev. Stat., N. Y., 1836, p. 728, §§ 50 to 53. This question will be examined; but let this be admitted, and still a defence is not made out; for the answer admits the payments to have been made out of these joint funds, without showing the proportions. We shall, therefore, regard them as truly set forth, not being denied. Nor could the trustee or agent derive any advantage from the confusion arising from her own fault in mixing her private with the trust moneys; and it becomes her duty to show how much belongs to her separately. 6 B. Mon. R. 106; 2 Johns. Ch. R. 405–410; 2 Edw. R. 373; 3 Mason, R. 360; 1 Story's Eq. Juris. § 468.

It is further contended, that there can be no resulting trust to the vendor in an absolute conveyance. This may be true, as a general rule; but, I think, can have no application to this case. This is a purchase by the agent or trustee actually in the management of the whole fund; and is not, therefore, to be confounded with purchases made by persons not sustaining such relation. So the principle laid down in Hovey et al. *v.* Holcomb et al., 11 Ill. R. 660, in relation to absolute deeds, does not extend to a case like this, to prevent the grantor taking a resulting trust in property purchased from him by his own agent of another fund and estate, and paid for in part with his own money. Such a rule might prevent a partner from selling to his firm, or to a company of which he might be a member, without the hazard of subjecting himself to the loss of such portion of the purchase-money belonging to him, as might be applied in the payment.

The only remaining question is in relation to the title to the lots in West and Water streets, under the New York statute,

and which will determine the ownership of that portion of the consideration money derived from the rents of those lots.

By the marriage, Seaman became entitled to his wife's property in possession, the rents of the land, and has a right to reduce into his possession her *choses in action.* But if, as is contended, by the investment of his moneys in the West and Water street lots, by Mrs. Drake, and taking the conveyances in her own name, with his knowledge, divests him of all right to the lots, by the statute of New York; then the rents would belong to her also, and would increase her interests in the Chicago lands in proportion. And in determining this question we must look to the statute of New York, and the decisions of her courts for its true interpretation.

The *lex loci rei sitæ* will govern in relation to the titles and ownership of lands. United States *v.* Jonah Crosby, 2 Pet. Cond. R. 437, and note; McConnell et al. *v.* Sullivant et al., 6 Cond. R. 70; Story Confl. Laws, §§ 363 to 365, 448, 454, 463.

By the statute of New York, (Rev. Stat. 1836, p. 728,) it is provided in section 50 that "The preceding sections of this article, shall not extend to trusts arising or resulting by implication of law, nor be construed to prevent or affect the creation of such express trusts as are hereinafter authorized and defined.

Section 51. " Where a grant for a valuable consideration shall be made to one person, and the consideration therefor, shall be paid by another, no use or trust shall result in favor of the person by whom such payment shall be made; but the title shall vest in the person named as the alienee in such conveyance, subject only to the provision of the next section.

Section 52. " Every such conveyance shall be presumed fraudulent, as against the creditors at the time, of the person paying the consideration; and where a fraudulent intent is not disproved, a trust shall result in favor of such creditors, to the extent that may be necessary to satisfy their just demands.

Section 53. " The provisions of the preceding fifty-first section shall not extend to cases where the alienee named in the conveyance, shall have taken the same as an absolute conveyance, in his own name, without the consent or knowledge of the person paying the consideration; or where such alienee, in violation of some trust, shall have purchased the lands so conveyed with moneys belong to another person."

The policy of this act, in Wait *v.* Day, 4 Denio, R. 442, is declared by the court, to be " to discourage the purchase of lands in the name of another, by cutting off any resulting use or trust, so far as the person paying the consideration is himself concerned." And as to creditors at the time of such conveyance,

only, does any use or trust result under the fifty-second section, and that to the person paying the consideration, but in favor of the creditor.

The phraseology of the fifty-first and fifty-second sections seems to contemplate, on the part of the owner of the consideration money, an active participation in the transaction, by paying the money.

The first paragraph of the 53d section is in harmony with this view. The person paying the purchase-money would have a right to the conveyance; and to sustain it as good against him, when made to another, his assent, or direction, expressly given, or to be implied from his knowledge of such a conveyance, and silence, must be satisfactorily shown. Otherwise, it might constitute a fraud upon his rights, and raise a resulting use or trust to him.

The phraseology of the last paragraph of the 53d section is different; and provides for a different state of facts and circumstances.

Where the alienee shall purchase lands with the money of another, " in violation of some trust," which may be as well in a perversion of the wrong kind of investment, as in the right subject-matter of investment, but in taking title in such manner as might endanger or destroy the rights of the *cestui que trust*, I apprehend the term " use or trust " is not used in the strictly technical sense in which the relation of trustee and *cestui que trust* are created, but in the most general and comprehensive sense of that term, and which would include all *quasi* trustees, and fiduciary relations, arising from the possession of property, and the control and management of interests belonging to others, by agents and such like, embracing the duty of safe keeping merely, as well as cases where the confidence required a particular management or application of the trust fund.

If this be a sound interpretation of that paragraph, this case is brought within the provision of that section, which provides two exceptions to the general rule laid down in the 51st section : " Uses and trusts are not wholly abolished; they are only modified " by this statute. Wait *v.* Day, 4 Denio, 442 ; and see section 45 of that act.

Mrs. Drake had managed this estate for thirty-seven years ; buying, selling, leasing, vesting, and reinvesting, collecting rents, &c., and as she thought proper, taking titles in the names of all those interested. And during all this time, they constituted but one family, of which she was the head — and as such supplied the common wants of all. The deed of partition neither changed the character of the tenancy, the title, or the respective

interests of the parties to it.　After Seaman became a member of the family, by marriage with one of the parties, and a party in interest, every thing continued as before, except the titles of the subsequent investments in the sole name of Mrs. Drake. This appears to us to have been in violation of the trust and confidence reposed in her as the acting agent for the owners. She commenced as administratrix in 1800 in a fiduciary'character as *quasi* trustee, and the record is silent as to a settlement of the trust, and a divestiture of the character, unless we should infer it from the making of the deed.　But admitting that the duties of administratrix had long since been fulfilled, still the confidence and trust relation arose from it, and had continued while she continued the same possession, management, and control, without alteration of the parties in interest.

As the consideration paid for the Water and West street lots was derived from the common fund, we are of opinion that there was a resulting trust of those lots to the common proprietors of the fund.　And, therefore, the rents issuing from those lots were in like manner the common property of all, and that the consideration of the Chicago land, in question, belonged in equal undivided third parts to each.

The decree of the circuit court is affirmed.

*Decree affirmed.*