### VAN DER VOLGEN *against* YATES.

Where, in a conveyance in fee, operating under the statute of uses, in which a consideration appears to have been paid, the grantor makes an express declaration of the whole use, but a part of the use fails to take effect by reason of the uncertainty of the *cestui que use*, the consideration expressed in the deed is regarded as an equivalent for the whole use declared, including as well that part which fails as that which is valid; and therefore that part of the use which fails does not result to the grantor, but vests in the grantee named in the deed, who paid the consideration.

Where the whole use is disposed of by the deed, nothing can result to the grantor.

ON the 27th of April, 1790, Nicholas Van der Volgen owned a lot in Schenectady, the land out of which this con-

troversy arose. On that day, by indenture of release reciting that the releasees were in possession of the premises "by virtue of a bargain and sale to them thereof made for one whole year, by indenture bearing date the day next before the day of the date of these presents, and by force of the statute for transferring uses into possession," and in consideration of £100 paid by the releasees, he released the premises to Robert Alexander and seven other persons named, of whom Joseph C. Yates, the original defendant in this action, was one, "and to their heirs and assigns forever." The deed then declared that the conveyance was "upon trust, nevertheless, to the only proper use, benefit and behoof of Cornelius Van Dyck" and twelve other persons named, "members of St. George's Lodge, in the town of Schenectady, and all others who at present are or hereafter may become members of the same, their survivors and successors forever, and to and for no other use, intent and purpose whatsoever." Then follows a covenant for further assurance to the releasees, their heirs and assigns, "to and for the uses and purposes hereinbefore specified and more particularly mentioned;" and a covenant for the quiet and peaceable possession of the releasees, their heirs and assigns "for the uses and purposes aforesaid." No conveyance of the premises, subsequent to this, was ever made.

In 1797 Nicholas Van der Volgen died, leaving a will in which, not having specifically disposed of the reversion of the premises in question, he made Lawrence and Petrus Van der Volgen his residuary devisees. In 1819 Petrus died, having devised all his estate by will to Myndert Van der Volgen; Lawrence and Myndert being thus the legal representatives of Nicholas in any devisable estate in the premises which he may have had at the time of his death.

In 1833 the act to incorporate the Utica and Schenectady Railroad Company was passed. Under its authority the company instituted proceedings to appropriate the lot in question to the use of the road. To these proceedings Lawrence and

Myndert Van der Volgen, Joseph C. Yates, now the sole survivor of the releasees in the before mentioned conveyance, and certain persons claiming to be members of St. George's Lodge, were made parties, all of the *cestuis que use* named in that instrument being dead. The commissioners awarded six cents to the two Van der Volgens, and $2755 to Yates "as trustee under the release;" and the two former filed their bill in chancery against the latter to compel the payment of the money to them as the representatives of the releasor, and entitled to the land or its proceeds. The vice-chancellor (GRIDLEY) dismissed the bill; and this decree was affirmed by the chancellor (WALWORTH). (3 *Barb. Ch. R.*, 242.) The complainants appealed to this court.

All the original parties to the action had died since the commencement of the suit, and their personal representatives were the present parties.

*William Tracy* for the appellants.

*A. C. Paige* for the respondent.

RUGGLES, Ch. J. In determining this case it will be assumed that the deed executed by Nicholas Van der Volgen to Robert Alexander and seven others for the use of Cornelius Van Dyck and twelve others, was a valid conveyance by lease and release, operating by force of the statute of uses, to vest in Van Dyck and others who are specially named as *cestuis que use*, an estate for their joint lives and the life of the survivor, but not an estate in fee: and that the limitation of the further use to "all others who were then or thereafter might become members of St. George's Lodge, their survivors and successors forever," was void for uncertainty; and that the use or equitable interest thus attempted to be given to the members of the lodge not specially named, cannot be sustained either as a legal estate by force of the statute of uses, or as an executory trust, or as a charitable

use. Upon these assumptions the only remaining question is whether upon the death of the last surviving *cestui que use* the estate resulted back to the representatives of the grantor, who are the complainants. If it did so, they are entitled to the money in controversy, otherwise not.

Before the statute of uses, and while uses were subjects of chancery jurisdiction exclusively, a use could not be raised by deed without a sufficient consideration; a doctrine taken from the maxim of the civil law, *ex nudo pacto non oritur actio.* In consequence of this rule the court of chancery would not compel the execution of a use, unless it had been raised for a good or valuable consideration; for that would be to enforce *donum gratuitum.* (1 *Cruise, tit. xi, ch.* 2, § 22.) And where a man made a feoffment to another without any consideration, equity presumed that he meant it to the use of himself; unless he expressly declared it to be to the use of another, and then nothing was presumed contrary to his own expressions. (2 *Bl. Com.*, 330.) If a person had conveyed his lands to another without consideration, or declaration of uses, the grantor became entitled to the use or pernancy of the profits of the lands thus conveyed.

This doctrine was not altered by the statute of uses. Therefore it became an established principle, that where the legal seizin or possession of lands is transferred by any common law conveyance or assurance, and no use is expressly declared, nor any consideration or evidence of intent to direct the use, such use shall result back to the original owner of the estate; for where there is neither consideration nor declaration of uses, nor any circumstance to show the intention of the parties, it cannot be supposed that the estate was intended to be given away. (1 *Cruise, tit. ii, ch.* 4, § 20,)

But if a valuable consideration appears, equity will immediately raise a use correspondent to such consideration. (2 *Bl. Com.*, 330.) And if in such case no use is expressly declared, the person to whom the legal estate is conveyed,

and from whom the consideration moved, will be entitled to the use. The payment of the consideration leads the use, unless it be expressly declared to some other person. The use results to the original owner where no consideration appears, because it cannot be supposed that the estate was intended to be given away; and by the same rule it will not result where a consideration has been paid, because in such case it cannot be supposed that the parties intended the land should go back to him who had been paid for it.

The statute of uses made no change in the equitable principles which previously governed resulting uses. It united the legal and equitable estates so that after the statute a conveyance of the use was a conveyance of the land :. and the land will not result or revert to the original owner except where the use would have done so before .the statute was passed. (*Cruise, tit. x., ch.* 4, § 20.)

It is still now, as it was before the statute, " the intention of the parties to be collected from the face of the deed that gives effect to resulting uses." (1 *Sanders on Uses,* 104, *ed. of* 1830.)

As a general rule it is true that where the owner for a pecuniary consideration conveys lands to uses, expressly declaring a part of the use, but making no disposition of the residue, so much of the use as the owner does not dispose of remains in him. (*Cruise, tit. xi, ch.* 4, § 21.) For example, if an estate be conveyed for valuable consideration to feoffees and their heirs to the use of them for their lives, the remainder of the use will result to the grantor. In such case the intent of the grantor to create a life estate only and to withhold the residue of the use is apparent on the face of the deed; the words of inheritance in the conveyance being effectual only for the purpose of serving the declared use. The consideration expressed in the conveyance is therefore deemed an equivalent only for the life estate. The residue of the use remains in or results to the grantor, because there was no grant of it,

nor any intention to grant it, and because it has never been paid for.

But the general rule above stated is clearly inapplicable to a case in which the intention of the grantor, apparent on the face of the deed, is to dispose of the entire use, or in other words of his whole estate in the land. Such is the case now before us for determination. The consideration expressed in Van der Volgen's deed was £100; and it is perfectly clear on the face of the conveyance that he intended to part with his whole title and interest in the land. He limited the use by the terms of his deed " to Cornelius Van Dyck and twelve other members of St. George's Lodge in the town of Schenectady, and all others who at present are, or hereafter may become members of the same, their survivors and successors forever." He attempted to convey the use and beneficial interest to the members of that lodge either as a corporate body, capable of taking by succession forever, or to that association for a charitable use or perpetuity. In either case, if the conveyance had taken effect according to the grantor's intention, it would have passed his whole title, and no part of the use could have resulted to him or his representatives. Admitting that the declaration of the uses was void except as to the *cestuis que use* who were specially named, and good as to them only for life, yet it cannot be doubted that the parties believed when the deed was executed that the grantor conveyed his whole title in fee, and the intention of the parties that the entire use and interest of the grantor should pass, is as clear as if the limitation of the whole use had been valid and effectual. This intent being established it follows, as a necessary consequence, that the sum of £100 consideration was paid and received as an equivalent for what was intended and supposed to have been conveyed, that is to say for an estate in fee. The express declaration of the use in the present case, instead of being presumptive evidence that the grantor did not intend to part with the

use in fee, is conclusive evidence that he did so intend; and the extent of the express declaration is as much the measure of the consideration as if the whole of the declared use had been valid. The complainant's claim to the resulting use, or reversion of the land, being founded solely on the assumption that the grantor never was paid for it, must, therefore, fail because the assumption is disproved by the deed itself.

A use never results against the intent of the parties. " Where there is any circumstance to show the intent of the parties to have been that the use should not result, it will remain in the persons to whom the legal estate is limited." (1 *Cruise, tit. xi, Use, ch.* 4, § 41.) In this case there are at least two such circumstances. They have already been alluded to; first, the intent expressly declared to convey the land in fee or in perpetuity for the benefit of the members of St. George's Lodge. This effectually repels the idea of a resulting use. The two intents are incompatible. Secondly, the payment of the purchase money, of which enough has been already said.

If it be said that the express declaration is a presumptive proof that the grantor did not intend that the grantees of the legal estate should have that part of the use which was effectually declared, the answer is, that the 'express declaration is proof at least equally strong that he did not mean that the use should result to himself. Conceding then that the intention of the parties in regard to this residue of the use cannot be carried into effect, the equity which governs resulting uses settles the question between them. It gives the residue to the grantees because the grantor has had the money for it, and the language of the conveyance is sufficient to pass it. The grantor cannot have the purchase money and the land also. Payment of the purchase money for the entire title, vests the entire use in the grantees, excepting only so much of it as may be effectually declared for the benefit of some other person.

It was insisted on the argument that where an estate is conveyed for particular purposes or on particular trusts only, which by accident or otherwise cannot take effect, a trust will result to the original owner or his heir; and that the present case falls within that principle. We were referred on this point to. *Cruise, tit. Trust, ch.* 1, § 56. But on looking at the cases cited by Mr. Cruise, they are found to be cases not of uses, but of active trusts; all excepting one created by devise, where of course no pecuniary consideration was paid, and the land therefore was not diverted from the heir-at-law on the failure of the trust. The case in which there was a conveyance in trust has no resemblance to the case now in hand. That the rule above cited from Cruise is inapplicable to the present case appears on Sir EDWARD COKE's authority, in *The Queen* v. *Porter* (1 *Rep.*, 24, 26), that upon a feoffment made without consideration to charitable uses void by statute, the feoffee should, notwithstanding the declaration of such uses, be seized to the feoffor and his heirs; but that if the feoffor had reserved but a penny rent, or had taken a penny in consideration of the feoffment, then, although the statute makes void the use expressed, yet the feoffees shall be seized to their own use and not to the use of the feoffor. This was said in the argument for the defendant Porter; and COKE, who was solicitor for the Queen, in a note at the end of the case, referring by a marginal note to this part of the argument, says: "And it is good policy upon every such feoffment (to charitable uses) to reserve a small rent to the feoffor and his heirs, or to express some such consideration of some small sum, *for the cause before rehearsed.*" Thus it appears that upon a feoffment to a void use, upon a pecuniary consideration, however small, the title vests in the feoffee for his own benefit. The conveyance in the present case was by lease and release, which operated in this respect like a feoffment, and vested the estate, legal and equitable, in the releasees, from and after the expiration of the valid use.

Whether they took this residue of the estate as tenants in common or as joint tenants is a question which does not arise in this case.   It has been assumed that the use expressed in favor of the members of St. George's Lodge, not specially named, was not valid as a charitable use.   But it was not necessary to decide that question.   The decision of this case must not be understood as settling any question as to the title to the money in controversy, except that no part of it belongs to the complainants.

Judges MASON, MORSE, JOHNSON and GARDINER concurred in the foregoing opinion.

WILLARD and TAGGART, Js., dissented.

Decree affirmed.