Lovett v. Taylor.

JOHN EDWARD LOVETT et ux.

v.

SARAH L. TAYLOR and husband, and GEORGE W. LOVETT.

1. No trust can be implied in favor of the grantor of land by deed operating under the statute of uses which contains the usual declaration of uses in favor of the grantee.

2. In the absence of fraud in the procuration of a deed of conveyance of land, fraud cannot be predicated of a mere refusal of a grantee to perform a parol promise, not proven by any writing, to hold the same in trust for the grantor.

3. Circumstances stated sufficient to warrant the court in setting aside an absolute deed intended to be made in trust.

On bill for partition.

The complainant John Edward Lovett, commonly called "Edward" Lovett, and the defendants Sarah L. Taylor and George W. Lovett are the three children and sole heirs-at-law of John Lovett, who died intestate in March, 1865, seized of the premises, leaving, besides his three children just named, a widow, Jane W. Lovett, who died in 1885.

By deed dated the 20th of January, 1869, the defendant George W. Lovett conveyed all the equal undivided one-third part of the premises in question to his mother, Jane W. Lovett. The conveyance was effected by an ordinary deed of bargain and sale to uses, with *habendum* to the grantee, her heirs and assigns, for her and their only proper use, benefit and behoof forever, with the usual covenants of ownership, against encumbrances, right to convey and of general warranty.

Jane Lovett, the widow, died intestate, in 1885, without having made any conveyance of her interest derived under this deed in the premises described in the bill.

The complainant, by his bill, claims a one-third interest in the premises, as heir-at-law of his father, John Lovett, and a

one-ninth interest as the heir-at-law of his mother, she having, as he claims, died seized of a one-third interest therein.

The defendant George W. Lovett, by his answer, admits having made the conveyance of the 20th of January, 1869, to his mother, but denies that the same was intended to be made as an absolute conveyance, and alleges that the same was made without consideration, and that the intention was that the premises should be held in trust by her for him and for his benefit, and that a reconveyance thereof was to be made at any time upon his request, but that his mother died without having made such reconveyance. He denies that his mother was seized in equity, at the time of her death, of an undivided one-third part of the lands, but that the said one-third part was held by her in trust for the benefit of him, George, and admits that the legal title descended to her heirs-at-law, but in trust for him.

The defendant Sarah L. Taylor, by her answer, admits the trust, and that her brother George is seized of an equal undivided one-third part of the premises.

The question in dispute, then, is as to the ownership in equity by the complainant of an equal undivided one-ninth part of the premises.

The bill further sets out that the premises of which partition is prayed, and other premises belonging to the parties, have been, since the mother's death, in the actual possession, by tenants, of the defendant Mrs. Taylor, she undertaking the personal management of it, and making payments from time to time to complainant on account of his share of the rents and profits, and prays that Mrs. Taylor may account for the moneys received by her. Mrs. Taylor, in her answer, did account for the rents, but no question is raised as to its accuracy at this time. The sole question at the hearing was as to whether the complainant held the legal title to one equal undivided ninth part of the premises in trust for his brother, George W. Lovett, the defendant.

*Mr. William E. Skinner*, for the complainant.

*Mr. Milton Demarest*, for the defendant George W. Lovett.

Lovett v. Taylor.

Pitney, V. C.

The defendant does not allege or prove any written declaration of trust or admission thereof, but alleges that the trust is to be inferred or held to result from the circumstances of the case.

These circumstances are not disputed and are as follows : The ancestor died early in 1865, seized of other pieces of real estate besides those set out in the bill, mostly improved and productive, and all situate in the village of Hackensack. He was also possessed of about $15,000 of personal property, consisting of about $5,000 in moneyed securities and the balance in furniture and liquors in his hotel. The widow took out letters of administration and assumed control of the real estate, and retained it until her death, collecting the rents and dividing them in fourths between herself and her three children. She seems to have conducted the hotel for the first few months, and then to have sold out the furniture and stock of liquors to a tenant. At the death of the father two of the three children were of age, and the defendant George a minor. In November, 1865, $11,216.25 were distributed among the next of kin, according to the statute, and I infer that this was the net proceeds of the personal estate. The share of the defendant George amounted to $2,501.40, and was receipted for by his guardian.

Some time prior to April 29th, 1869, George went into the grocery business in Hackensack, first alone, and afterwards took in as partners two brothers named Stewart, when the business was conducted under the partnership name of Stewart & Lovett. On the day last named, April 29th, 1869, the complainant, John Edward, bought out the interest of one of the Stewarts, and became a partner therein. This date is fixed by the original receipt given to the complainant, and clears up some uncertainty upon the point in the oral evidence of the witnesses, and I have no doubt from the evidence that defendant George had been in the business some time previous to the date (January 20th, 1869) of the conveyance to his mother.

At and before the date of that conveyance George had been acquiring expensive and dissipated habits, and developing a disposition for bad company and to squander his estate, threatening

to mortgage it. He spent more than his income, and ran in debt for hotel and livery bills, in, however, comparatively small amounts. In this situation of affairs, his sister and her husband, who appear to be sensible and worthy people and much superior in mental calibre and intelligence to the brothers, called into their counsel and assistance Judge B., a practicing lawyer in Hackensack. He had been and was then the counsel of the mother. His account of the affair is brief and clear:

"The circumstances that led up to the giving of this deed were simply these: George W. Lovett was getting into bad company and forming bad habits; he was really going to the bad; he was incurring hotel bills and livery bills, and this deed was given for the purpose of keeping him from squandering his property."

No consideration was paid, and nothing was said at or before the execution and delivery of the deed with regard to the estate the grantee was to take under it. "The fact was," says Judge B., "that she simply took it for the purpose of preserving the property for George so that he should not squander it." The fact that he was in debt and threatened with suit was one of the causes that led up to the deed. He further says that he cannot say there was any understanding, on the part of Mrs. Lovett, at the time, that the property should be reconveyed to George, but he says that frequently in after years his mother was minded to so reconvey it, and was prevented by the continued influence of Mr. and Mrs. Taylor and himself from so doing.

She continued to pay George his share of the rents after the conveyance up to her death, and on her death-bed spoke to her daughter, Mrs. Taylor, about the deed, and said:

"I leave George in your hands, and you know what my wishes are, and you are to do as I intended, that is, to give him his income the same as he has been getting it."

In other respects Mrs. Taylor simply corroborates Judge B.

Mr. Taylor goes a little further than Judge B. He gives the same reason for the making of the conveyance, and says he assisted in inducing George to make it and so forth, and adds:

"I promised George that if anything happened I would see him straight in the matter as far as I could. With that understanding he signed the deed. Mrs. Lovett promised him to transfer or reconvey at any time afterwards—a few years afterwards—and I have always neglected to get a writing out of her showing that that was the case."

George himself has little memory as to what occurred in connection with the giving of the deed, except that both his brother-in-law, Taylor, and Judge B. advised him to make the deed, and that he made it to his mother in trust, and that she was willing at all times to convey it back, but never did. The complainant swears, and I believe him, that he was not consulted in the affair and only heard of it from outsiders; that the rumor in the town was that George had made an assignment to his mother. This rumor would naturally arise from a perusal of the deed, which conveyed not only all the lands held in common and all his interest in his father's estate, but all his interest in the firm of Taylor & Lovett. He further says that afterwards, in his mother's lifetime, he understood that George was persistently trying to get his property back again and that his mother refused. He knew nothing of the contents of the deed and was ignorant of its effect until he consulted counsel preliminary to this suit.

The deed, as we have seen, was dated and executed on January 20th, 1869, but was not recorded until April 9th, and twenty days later complainant bought his way into the firm of Taylor & Lovett. Mrs. Lovett, the mother, was obliged to back the firm, and became, in effect, a partner and liable as such. Judge B., who, as counsel, became familiar with the affairs, says that her liability arose not only from her taking the assignment of George's interest, included in the deed of January 20th, 1869, but also from meddling in the affairs of the firm, while Mr. Taylor says her liability arose from endorsing the firm's notes. Be that as it may, the firm failed in less than a year, and several judgments were recovered against Stewart, the complainant and Mrs. Lovett. But the records are not produced to show whether she was charged as partner or endorser. Judge B. settled these judgments and other indebtedness of the firm to the extent of

about $3,300, with money furnished by Mrs. Lovett, and she paid all George's debts out of the rents and proceeds of sales.

Subsequently Mrs. Lovett, jointly with the complainant and Mrs. Taylor, made conveyance of two parcels of the land and divided the proceeds equally among her children. After her death one or more conveyances of premises were made by the parties hereto and the proceeds divided into thirds among them. Besides these sales, one parcel was actually partitioned by agreement, by means of mutual releases, and the evidence tends to show that the intention was to make a partition in parts of equal value, instead of four-ninths to complainant, and four-ninths to Mrs. Taylor, and one-ninth only to George; and this treatment of these parcels is relied upon as admissions by the complainant that he held only a one-third interest instead of four-ninths.

In considering the effect of these facts, it is worth while to premise that the case is bare either of the element of fraud or accident. It is impossible to find the least ground to accuse the principal actors and promoters, Mr. and Mrs. Taylor and Judge B., of any sort of fraud. Their motives were of the best and kindest, namely, to protect the young man from himself and to preserve this property to his future use by putting it entirely beyond his control. They practiced upon him no deceit and made no false representations. There is no reason to suspect that either the mother or daughter induced him to do this act with the secret expectation and intention to make a gain to themselves at the expense of the son of the one and the brother of the other. Nor is there the least ground to infer any accident or even mistake in the ordinary acceptation of the word. The deed was prepared by, and the transaction carried through under the supervision of, experienced counsel who know just what the parties desired to accomplish, and the deed was in all its parts just what he intended it should be. He thoroughly understood its effect, and the presumption is that the grantor did also. He makes no pretence to the contrary, except to say that he understood that it was to be in trust for himself, and that, indeed, was the understanding of all the parties.

The case is clearly distinguishable from those where a convey-

ance has, by mistake in verbiage, taken on an effect different from that intended. We are not now, of course, considering mistakes in judgment as to the policy of a course to be pursued, or means to be adopted, in attaining a certain result, or of a mere failure to appreciate the necessity of providing against a future contingency. Judge B. might have devised a declaration of trust to be executed by Mrs. Lovett, which would have embodied in itself a family settlement of George's share in the estate, in accordance with the intention of the parties. Whether his failure to suggest and properly embody in writing such an arrangement entitles defendant to relief or not will be considered further on.

In point of fact, the grantor was content to rely, for present purposes at least, upon his mother's verbal promise, and has enjoyed the benefit of it for more than twenty-five years.

His reliance at the hearing was (1) upon an implied or resulting trust, and (2) upon the actual intention of the parties.

And first, as to a trust resulting by implication. It was very properly admitted at the argument that the trust must result from the facts as they existed at the date of the transaction. It cannot arise from matters *ex post facto*. *Cutler* v. *Tuttle, 4 C. E. Gr. 549; Tunnard* v. *Littell, 8 C. E. Gr. 264; Midmer* v. *Midmer, 11 C. E. Gr. 299; Krauth* v. *Thiele, 18 Stew. Eq. 407; Whitly* v. *Ogle, 2 Dick. Ch. Rep. 67.*

It is also clear that the facts and circumstances out of which the trust arises may be proven by parol. It is also clear that it must arise out of facts and circumstances as distinguished from a mere parol promise or contract. *Brown Stat. F.* §§ *95, 499* and cases cited; *3 Reed Stat. F.* § *899; Montacute* v. *Maxwell, 1 P. Wms. 618,* where Lord Macclesfield says : " Where there is no fraud, only relying upon the honor, word or promise of the defendant, the statute makes those promises void. Equity will not interfere." And Mr. Reed (at § *899)* says that " constructive trusts never arise from the agreement that there shall be such a trust." And the supreme court of Illinois, in *Williams* v. *Brown, 14 Ill. 200,* said tersely : " No contract between parties can make a resulting trust." And Chancellor Williamson,

in *Baldwin* v. *Campfield, 4 Halst. 891* (at *p. 892*), declares the same doctrine. He says : " I need not stop here to show that no relief can be afforded upon this bill, upon the ground of any parol agreement between the parties. Trusts are *express,* and implied or resulting trusts. An *express* trust must be in writing. A *resulting* trust is a trust which is raised or created by the act or construction of law. A trust created by the act of the parties is an *express* trust."

This must be so upon principle, and to hold otherwise is to disregard the statute of frauds.

The case must be considered independent of the mother's promise to the son, and must rest upon the bare facts.

The principal fact relied upon to show a resulting trust is that the conveyance was made without consideration from a son to his mother, with the intention to secure it for the son against his own improvidence.

I think it must be considered as settled by the uniform course of judicial expression and decision in this state, and by the clear weight of authority in the other states of our Union, that no trust results from the mere non-payment of consideration upon a conveyance like that in this case. The reason of this is clearly set forth by Mr. Perry in his treatise. *1 Perry Trusts §§ 161, 162.* The old common-law conveyances operated to pass the title without the machinery of a declaration of uses, and where no use was declared, and in the absence of an actual consideration paid, the courts raised a resulting trust in favor of the grantor. But modern conveyances, of which the one in hand is a sample, operate under the statute of uses and contain an express declaration of uses, and it is contrary to first principles to permit this declaration to be contradicted by parol except in cases of fraud, accident or mistake.

To the same effect is *Hill Trust. p. 107.* The author there, when speaking of deeds of this character without consideration, says :

" But parol declarations cannot be received in evidence with this object, namely, to establish a trust ; for, in these cases, there exists no resulting or presumptive trust, and the admission of such evidence would be for the purpose of contradicting the written instrument and establishing a trust by parol in the very teeth of the statute of frauds."

Lovett *v.* Taylor.

The authorities in this state, supporting this doctrine, are the following: *Hutchinson* v. *Tyndall, 2 Gr. Ch. 357* (at *p. 362*), (a case of a voluntary conveyance to a stranger); *Baldwin* v. *Campfield, 4 Halst. 891* (at *p. 901*), per *Williamson, C.* (at *pp. 902, 904*), per *Elmer, J.* (a case of a voluntary deed by a father to a son-in-law); *Smith* v. *Howell, 3 Stock. 349* (at *p. 359*), per *Williamson, C.; Whyte* v. *Arthur, 2 C. E. Gr. 521; S. C., Court of Errors and Appeals, p. 523* (deed and mortgage, parent to child); *Hogan* v. *Jaques, 4 C. E. Gr. 123* (at *pp. 126, 127*), per *Zabriskie, C.; Osborn* v. *Osborn, 2 Stew. Eq. 385* (at *p. 387*), per *Runyon, C.*

Many authorities in other states are collected in the note to *3 Reed Stat. F. § 998,* and by the learned American editors of *Leading Cases in Equity* in their notes to *Dyer* v. *Dyer, 4 Lead. Cas. Eq. (Am. ed.) 350, 356.* I cite *Rathburn* v. *Rathburn, 6 Barb. 98* (at *p. 107*); *Squire* v. *Hurder, 1 Paige 493; Vandervolgen* v. *Yates, 9 N. Y. 219; Porter* v. *Mayfield, 21 Pa. St. 263; Barry* v. *Hill, 166 Pa. St. 344; Titcomb* v. *Morrell, 10 Allen 15; Blodgett* v. *Hildreth, 103 Mass. 484; Rasdell* v. *Rasdell, 9 Wis. 379,* a well-reasoned and valuable case; *Calder* v. *Moran, 49 Mich. 14; Palmer* v. *Sterling, 41 Mich. 221; Seaman* v. *Cook, 14 Ill. 501; Kimbell* v. *Walker, 30 Ill. 489* (at *pp. 510, 511*); *Philbrook* v. *Delano, 29 Me. 413; Graves* v. *Graves, 9 Fost. 129; Salisbury* v. *Clark, 61 Vt. 453.*

Apparently opposed to this line of authority is *Hall* v. *Livingstone, 3 Del. Ch. 348,* which, however, is distinguishable because the statute of that state is peculiar. In the elaborate opinion, the learned chancellor cites a few cases in North Carolina and elsewhere, based on statutes similar to that of Delaware, which are in accord with him.

In England we have *Pilkington* v. *Bayley, 7 Bell P. C. 526; Taylor* v. *Taylor, 1 Atk. 447; Lloyd* v. *Spillett, 2 Atk. 148* (at *p. 150*), where is found the famous classification of Lord Hardwicke of resulting trusts, which excludes a resulting trust in favor of the grantor; *Young* v. *Peach, 2 Atk. 254* (at *p. 256*); *Leman* v. *Whitley, 4 Russ. 423; 6 L. J. Ch. (N. S.) 152 (1828); Davies* v. *Ottey, 35 Beav. 542; 34 L. J. Ch. (N. S.) 252 (1865);*

*Childers* v. *Childers, 3 Kay & J. 310; 3 De G. & J. 482; 26
L. J. Ch. 643 (at pp. 643, 743); 3 Jur. (N. S.) 509, 1277 (1857);
Booth* v. *Turle, L. R. 16 Eq. Cas. 182 (1873); Haigh* v. *Kaye,
L. R. 7 Ch. App. Cas. 469 (1872).*

It must be confessed that the cases decided in England since
*Leman* v. *Whitley,* above cited, are not fully, if at all, in accord
with the American cases, and I cannot but think that they are
departures from the "ancient way."

In *Davies* v. *Ottey,* complainant being in fear of prosecution
for bigamy and of being compelled to support his first wife, con-
veyed his land, without consideration, to his son-in-law, "until
the annoyance of the discovery and fear of prosecution should
have passed over." In point of fact, complainant was summoned
by the parish to pay for his first wife's support, but defeated
the proceedings. Lord Romilly decreed a reconveyance, on the
ground that the statute of frauds did not apply; that it was
a case of resulting trust and a fraud, namely, that it was not
honest for the defendant to keep the land. The character of the
conveyance is not stated.

*Childers* v. *Childers* was a conveyance by a father (a large
landowner) to a son, to make him competent to serve as a bailiff
or manager of drainage of the Great Bedford Level. The son
was absent in Italy, where he died shortly after the execution of
the deed, without ever having seen or heard of it. It was, how-
ever, registered. Lord Hatherley (then Sir William Page Wood)
held the conveyance was for an unlawful purpose and denied
relief to the grantor in a suit against the infant child and heir
of the son. On appeal, and upon further evidence, the court
on appeals (Lord-Justices Knight Bruce and Turner) gave relief
on the ground both of mistake in the deed and that a trust
resulted.

*Booth* v. *Turle* was a case of mistake in the conveyance.

In *Haigh* v. *Kaye,* the complainant, expecting an adverse
decision against him in a chancery suit, conveyed an estate by
absolute conveyance, but whether with a declaration of uses does
not appear, to the defendant, upon an expressed moneyed consid-
eration, which was not paid, and upon the express promise to

Lovett *v.* Taylor.

reconvey. The defendant, in his answer, admitted the parol promise to reconvey, but set up and relied upon the statute of frauds. It was held that the illegal character of the conveyance did not clearly appear, and that the case was one of resulting trust, and that the statute of frauds did not apply, and further, that it was a fraud for the defendant to retain the title in the face of his parol promise.

It is possible that this decision may be supported, under the English rule, upon the ground that the defendant admitted the trust in his answer, and thus the statute was satisfied.

None of the judgments in these cases was delivered after consideration, but all on the spur of the moment. But there is manifest in them a disposition, on the part of the English judges, to imply a resulting trust in favor of the grantor from the mere non-payment of the consideration money ; and also to find fraud as a ground for relief in equity from a mere failure to recognize the obligation of a parol trust which the statute declares to be void. This, I think, is clearly erroneous. The fraud which entitles a party to be relieved from the effect of a deed, whether of conveyance or other contractual obligation, is fraud or covin in its procuration—false representations or promises not intended at the time to be carried out, and the like. Fraud cannot be predicated on a mere failure or refusal to perform a parol promise originally made in good faith, but void under the statute of frauds. To hold otherwise is to annul the statute.

This aspect of the case is discussed with great ability by the Wisconsin court in *Rasdall* v. *Rasdall*. In that case evidence had been given, resulting in proof satisfactory to the court, that a conveyance of land had been made by the plaintiff's intestate to the defendant, upon a parol promise to hold the property in trust for the use and benefit of the intestate and his heirs. In discussing the matter the court says : " We do not feel called upon to cite authorities to show that, in the absence of fraud, accident or mistake, parol evidence cannot be received to prove that a deed, absolute on its face, was given in trust for the benefit of the grantor, and we have not been able to find anything in this case to make it an exception. We cannot see why, if this

21

Lovett v. Taylor.

evidence is to be received to establish this trust, every other deed in the state may not be shown by parol to have been given upon trust and the statute of frauds be entirely annulled." The court then states that the plaintiffs put themselves upon the ground of fraud, and proceeds:

"This presents a question of very great importance, and, in view of the authorities on the subject, of no little difficulty. There is no doubt that if any fraud had been alleged, by means of which the defendant procured the conveyance from his brother to himself, or any mistake, by which the instrument was made absolute instead of expressing the trust intended, parol evidence would have been admissible to show any fraud or mistake. * * * The only fraud alleged is that of the defendants now claiming the property in violation of the parol trust, and whether that constitutes such a fraud as will justify a court of equity in overturning the written contract of the parties upon parol evidence, is the question presented.

"It cannot be denied that if the court can, by any legal means, arrive at the existence of the parol trust, then the violation of it by the defendant, in wresting their inheritance from the family of his dead brother, is most grossly fraudulent. And to avoid such injustice courts of equity have frequently seized upon the slightest circumstances connected with the procurement of the conveyance to avoid the operation of the statute of frauds. And there are cases, the principle of which would warrant the assertion that the attempt by the defendant to claim the rights which this deed, on its face, gives him, contrary to the parol trust, is such a fraud as would justify the relief upon parol evidence. But I confess my inability to see how, upon principle, this position can be sustained consistently with a due observance of the statute. Placing the relief in such cases upon the ground of fraud is implied by admitting that the parol evidence cannot be admitted to establish the trust, for the purpose of enforcing it, directly as a trust. And this is also expressly admitted. But it seems apparent to my mind that to say, in such a case, it shall be admitted to establish the fraud, is equally a violation of the statute, because the fraud consists only in the refusal to execute

Lovett v. Taylor.

the trust. The court, therefore, cannot say that there is a fraud without first saying that there is a trust. And the parol evidence, if admitted, must be admitted to establish the trust, in order that the court may charge the party with fraud in setting up his claim against it. Conceding, then, that they cannot execute the trust directly in such case, because it cannot be proved by parol, is it not a mere evasion of the statute to say that they will allow it to be proved by parol for the purpose of enforcing it indirectly, by charging the party with fraud for refusing to execute it? Such a course does not relieve the court from the charge of violating the statute, but subjects it to the odium of an attempted but unsuccessful evasion.

" It may be said that fraud ought not to be tolerated. That is very true, but that is not the question. The question is whether the court, without violating the law, can get at the fraud. There is no doubt that trusts ought to be enforced, but that is not a sufficient reason for admitting parol evidence to establish them. When the party offers this, the court says no; the law forbids it.

" So, however desirable it may be to prevent fraud, if the fraud cannot be established except by first showing a trust by parol, is not the same answer equally applicable? If not, it is difficult to see that the statute of frauds is to have any practical effect, for, although trusts and agreements contrary to the written contracts of parties cannot be proved by parol so as to be enforced as such, yet they may be proved and held of sufficient force to charge the party with fraud in not observing them. And the result is practically the same. It is for courts to say to the parties, 'These agreements are not valid, not binding; we cannot compel you to observe them, yet if you do not observe them without being compelled, we will hold that to be a fraud on your part, and for the fraud, will compel you to execute them.'

" It is impossible to reconcile with principle very many of the adjudications upon the statute of frauds. * * * But the distinction between fraud in procuring a conveyance and that which arises only from the refusal to execute a parol trust or

Lovett *v.* Taylor.

agreement, connected with a conveyance obtained without fraud, is not only clear upon principle, but is not without sanction. * * * And we must hold that, as the deed was made absolute to the defendant, without any mistake or fraud on his part, his mere refusal to perform the trust is not such a fraud as will justify the admission of parol evidence and the enforcement of the trust. The reason is that the law forbids us to be informed that there was a trust by that kind of evidence. It may and does undoubtedly work hardship in this case, and that we regret; but if parties will, in face of the positive provisions of the statute, risk their interest upon the honor and justice of others, and the security fails them, they have no right to ask courts to violate the law to furnish relief.''

This reasoning, as well as that which forbids the implication of a trust for the grantor of a deed to the uses of the grantee from the mere non-payment of the consideration money, does not reach either the case of the payment of the consideration money by a third person or that of a conveyance absolute made as security for a loan of money.

I conclude, then, that no trust for the grantor resulted, or can be implied, from the circumstances of this case, and that no fraud was practiced upon the defendant George, nor can any be implied against either his mother or the complainant.

It remains to see whether relief may be granted upon the second ground, viz., the intention of the parties.

In order to give relief on that ground it seems to me that the conveyance itself must be either set aside *in toto* or reformed. It is hardly necessary to say that, in order to set aside or reform the deed, the pleadings must be properly framed for that purpose and the proof must be clear. There should, in this case, be a cross-bill properly framed to bring the equity before the court. It is not too late for this defect to be supplied, and I will listen to an application for that purpose, which must be granted, if at all, upon terms of an opportunity to the complainant to answer and adduce further proofs if desired.

But as each party was allowed, subject to objection, to introduce, and apparently did introduce, all the proofs within their

respective reach, I think it proper to express my views upon the effect of the evidence on an issue to be raised by amendment.

There can be no doubt that the intention of all the parties was to secure George's share in the property for his benefit, and that he or his children, if he had any, were ultimately to have the title. The difficulty in the case is to determine for how long a time his mother was expected to hold the title; in other words, to define the terms of the trust. Neither Judge B. nor Mrs. Taylor gave any evidence upon this point, and Mr. Taylor says that she was to hold it " for a few years." Then we have the fact that, acting by the advice of her children and her counsel, Mrs. Lovett did decline to reconvey, and on her death-bed expressed her wish that George should continue to have the income as before.

Under these circumstances, if George, at the date of this transaction, had been a man of more mature age and of greater experience, and of the average capacity to take care of himself and to manage his own business affairs, and had acted of his own free will, with the aid of independent counsel, I should find it difficult, if not impossible, to relieve him. But such was not his condition. He was young, inexperienced, of slender intellect, and of little or no business capacity. He had no independent counsel, but acted upon the solicitation of his friends and their counsel. They were influenced in what they did by the very best motives, and the results so far have been most beneficial to George. But the question remains whether he ought, in equity, to be held bound by a deed which failed to provide for the very event which had occurred and which in the ordinary course of nature was most likely to occur, viz., the death of his mother in his lifetime, without having made any proper disposition of the property which he had conveyed to her.

Now, as before observed, it seems to me that a provision to define George's rights fully from the beginning might have been framed, and either inserted in the original deed or embodied in a declaration of trust, and executed by Mrs. Lovett. And it further seems to me that, under all the circumstances of the case, it was the duty of Mrs. Lovett's counsel to have seen to it that

such a provision was made, and that his failure so to do ought not. to be permitted to work a loss to George in the premises; in other words, that he ought not to be held bound by this deed, but should be relieved from its effect, either by setting it aside altogether or by a proper reformation. of it. In saying this I desire it to be expressly understood as not intending to cast any reflection upon Judge B. Mrs. Lovett was at that time evidently a woman yet in the prime of life and entirely trustworthy. The present peril of the situation demanded immediate attention and remedy. He no doubt supposed that the future would, so to speak, take care of itself. As before remarked, the results have been most. beneficial; and if relief could not now be granted to George, and he should lose one-third of the remainder of his patrimony, he would no doubt still be a great gainer by the making of the deed in question.

I will advise a decree that, upon the present pleadings and proofs, the complainant is entitled to four-ninths of the premises, and will entertain a motion on behalf of the defendant George W. Lovett to amend.