Williams *v.* Brown et al.

---

HENRY J. WILLIAMS, Plaintiff in Error, *v.* ISAAC S. BROWN et al., Defendants in Error.

### ERROR TO PIKE.

Where W. advanced to B. fifty dollars with which to purchase land for W., and B. bargained with S. for the land, and paid him therefor the money advanced by W., but took the bond for the deed to himself, promising to convey to W. so soon as he should obtain the deed:—

*Held,* that a resulting trust arose in favor of W., and that B. having caused a

conveyance to be made to his mother-in-law, a member of his family, who had notice of the equitable title of W., that W. was entitled to the premises.

A purchaser who buys land in the possession of another, is bound to inquire of the person in possession, by what tenure he holds, and may not excuse himself by merely obtaining information of the character in which the possession was first obtained.

The purchaser of real estate is bound to inform himself as to what interest the party in possession claims, and it makes no difference whether he originally entered as tenant or otherwise; his possession is constructive notice of his rights in the premises, unless he fails to state them when inquired of.

No contract between the parties can create a resulting trust, but it is an implication of law arising from the fact that land was purchased with the money of one party, and the conveyance made to another.

Notice to an agent, is notice to the principal, if the fact of notice can be traced to the principal.

THE decree in this case was entered by MINSHALL, Judge, at October term, 1851, of the Pike Circuit Court.

M. HAY and R. S. BLACKWELL, for plaintiff in error.

J. GRIMSHAW, for defendants in error.

CATON, J. The bill avers that the complainant advanced to the defendant Brown fifty dollars, with which to purchase the premises in question for him, and that Brown undertook the trust. That, on the same day, Brown bargained with Swaringen for the land, paid him therefor the fifty dollars advanced by the complainant, and took a bond for a deed to himself, and that he promised to convey to the complainant so soon as he should get a deed from Swaringen. This he subsequently refused to do, but procured a conveyance to be made from Swaringen to Mrs. Hay, who was his mother-in-law, and a member of his family; and that at the time the conveyance was made to her, she had notice of the complainant's equitable title. The bill prays for a conveyance of the premises to the complainant, and for general relief.

The answers are not sworn to.

Brown admits that he agreed to purchase the land for the complainant, and that for that purpose, he received from him fifty dollars; that he subsequently made a written agreement with Swaringen for the land, at eight dollars and seventy-five cents per acre, but did not pay for it at the time; that, had he got a conveyance of the land from Swaringen, he intended to have conveyed it to the complainant, but that Swaringen, when he learned the land was intended for the complainant, refused to complete the bargain and make a deed; and that Brown, rather than involve himself in litigation, surrendered to Swaringen the

bond; that he subsequently purchased the land for Mrs. Hay, and paid her money therefor, and took a conveyance to her, and that she holds it now in her own right.

Mrs. Hay in her answer, denies any personal knowledge that the complainant had employed Brown to purchase the premises for him; says she purchased the land from Swaringen, paid her own money therefor, and took a deed to herself and for her own use. A replication was filed to both answers.

Mr. Mudd testifies to the sale of the premises from Swaringen to Brown; that they estimated the quantity at about six acres, and the price agreed upon was $8.75 per acre, and that Brown paid to Swaringen fifty dollars at the time. This purchase was made in the fall or winter of 1839.

Latham swears that he heard a conversation between the complainant and the defendant Brown, in which the latter admitted that he had purchased the land for the former, and paid his money therefor.

George Hoarer testified that Brown told him that Williams had given him money to buy the land with, and that Swaringen refused to convey the premises to Williams.

Mrs. Williams, the mother of the complainant, testifies that, about the close of the year 1849, she heard Brown say that he purchased the land for the complainant, and with his money, and that he would make him a deed for it so soon as he could get one from Swaringen.

Augustus L. Brown, on the part of the defendants, testifies that, about the month of June, 1850, his father, the defendant, gave him fifty dollars, as the money which the complainant had advanced him for the purchase of the land; that he tendered the money to the complainant, who refused to accept it, but insisted on a conveyance of the premises.

Several witnesses testified that the character of Latham for truth and veracity was bad.

Two questions arise in this case: First, was the land purchased by Brown with the money of the complainant? And, second, was Mrs. Hay a subsequent bonâ fide purchaser without notice? If this bill is to be maintained, it must be upon the ground that here was a resulting trust. No contract between the parties can create such a trust, but it is an implication of law arising from the fact that the land was purchased with the money of one party, and the conveyance made to another. When such is the case, he with whose money the land was purchased, may follow the money into the land. Such a trust may be raised without any contract or understanding between the trustee and cestui que trust, and even in the total

ignorance of one of the parties, — as where the owner of the money purchases land and takes the conveyance to another without his knowledge, or where one buys land with the money of another and takes a deed to himself. In either case, the law will raise a trust in favor of him, with whose money the purchase was made. While a parol agreement between the parties does not help the trust, neither does it prevent that implication of law from which the trust arises. The question of the ownership of the money may, frequently, and indeed, most generally is proved, either in whole or in part, by establishing some contract between the parties, either in reference to the money or the purchase. Such were the cases of Boyd *v.* McLean, 1 Johns. C. R. 582; and Coats *v.* Woodworth, 13 Illinois, 654. In this case, while the agreement which is clearly proved, by which Brown was to purchase the land for Williams, cannot be enforced either at law or in equity, it may still be considered in determining the question, whose money paid for the land. It may constitute important auxiliary proof on this point. The evidence, however, is very satisfactory on this point, independent of the agreement. The answer admits, and the proof shows, that the complainant advanced to the defendant Brown fifty dollars, for the purpose of making the purchase, and Mudd swears that at the time the purchase was made, Brown paid to the vendee fifty dollars, and two other witnesses testify to several conversations between the parties, in which Brown distinctly admitted that he had purchased the land for the complainant, and with his money. These statements were made while Brown held Swaringen's bond for a deed of the premises, and long before the defendant Hay had acquired any interest in them. Declarations thus made are competent evidence in favor of the complainant, to establish the fact thus admitted, although, at least, as to the other defendant, not conclusive evidence of such fact. When we add to this the moral obligation which the agreement between the parties imposed upon Brown, thus to invest the money, it leaves no reasonable room to doubt as to that fact. And there is no proof in the case tending to rebut this conclusion. So far from proving that Mrs. Hay paid any thing for the land, there is nothing to show that any money whatever was paid at the time the deed was made to her. Had such been the case, the proof to establish it was peculiarly within the knowledge and control of the defendants, and it was their duty to produce it, and thus, if possible, rebut the strong case made out by the complainant.

It may be inquired, why an immediate conveyance was not

made, if the purchase-money was paid by Brown at the time of the purchase? Beside the positive testimony to the fact of the payment of the fifty dollars, a satisfactory answer to this is otherwise found in the record. The purchase was at so much per acre, and according to the estimated quantity of land; the purchase-money would amount to a trifle more than the fifty dollars, which excess was to be subsequently determined by a survey, and in the mean time, the purchase was to be evidenced by the bond. This explains satisfactorily why a conveyance was not made at the time of the purchase. But it was urged that the complainant was not entitled to a conveyance, because there is no evidence that he has ever paid such balance, or rather that such balance was not paid with his money. That is true; but it is equally true, that there is nothing to show that there was any balance whatever remaining unpaid, after the application of the fifty dollars. There is no pretence in the evidence, nor even in the answers, that either of the defendants, or any other person, ever paid Swaringen any thing more than the fifty dollars, or indeed that any survey was ever made of the land, showing that the purchase-money, according to the terms of the purchase, would amount to any more than the money paid down at the time. So far as we can determine from the record, Swaringen made the conveyance without any further demand or payment, and if he chose to waive his right to a survey, in order to determine if any thing more was due him, it is not for the defendants to object for him. They are not called upon to protect his right, which he has voluntarily relinquished. They can claim no benefit from his voluntary waiver of his strict rights according to the letter of his bond. So far as appears, all that was ever paid for the land was the money of the complainant, and he has a right, in equity, to follow it into the land, and claim the benefit of the purchase. It is true, that the answers which are not sworn to, state that Mrs. Hay paid for the land with her own money, and for her own benefit, but there is no proof to support this. Nor do even the answers state that she ever paid Swaringen any thing, or that she paid any one more than the fifty dollars, or any other sum, but only that she paid for the land with her own money. It is a most reasonable inference, that if she ever made any payment to any person, it was to her son-in-law, Brown, and that, probably, was the money subsequently tendered to Williams by young Brown, which, he says, his father gave him for that purpose, as the money originally advanced by Williams. Brown's consistency in sending this money to Williams, as the money originally received from him, is not very manifest when we remember his

repeated declarations, that he had paid for the land with that money. We ought not, in the absence of proof, to presume that those statements were false. The whole case considered, we have no sort of doubt, that all the money which was ever paid to Swaringen for this land, was the money of the complainant, and that he had a right to insist upon the benefit of the purchase, and to decline to accept the money tendered him. His equitable rights had vested, and they could not be destroyed by the act of the other party alone. The trust had been created, and the trustee could not destroy it, without his consent, by this futile tender.

The only remaining question to be considered is, that of notice of the trust to Mrs. Hay, admitting that she had actually paid her money for the land. This is easily disposed of. In the first place, Brown purchased the land for her, if any such purchase was made, and he certainly knew of the complainant's right to the land, for he had made the purchase for him. This unquestionable notice to her agent, was good notice to the principal. But forgetting this, and laying out of view, also, that she was the mother-in-law of Brown, and a member of his family, where this arrangement with Williams seems to have been a subject of frequent conversation, and also disregarding the evidence tending to show that she was actually present at one of these conversations which were had between Williams and Brown, it is proved beyond controversy, that Williams was all the while in the actual, open, notorious, and exclusive possession of the premises. This was constructive notice to her of all the rights of the tenant in possession, as has been repeatedly held by this court. Nor did it make any difference that he took possession as tenant, and not as purchaser.

The purchaser who buys land in the possession of another, is bound to inquire of the person in possession, by what tenure he holds possession, and what interest he claims in the premises; and may not excuse himself by merely obtaining information of the character in which the possession was originally obtained. Had the defendant Hay made this inquiry of Williams, she might have learned, with certainty, what rights he did claim; or if, upon such inquiry being made, he had refused to give information of the interest which he did have in the premises, or had claimed a less interest than the one now proved, he might have waived the benefit of the constructive notice, or been estopped from claiming a greater interest than that then asserted; but having failed to make such inquiry, she must be presumed to have known the extent of his real interest.

The decree of the circuit court must be reversed, and the suit remanded, with instructions to the circuit court to enter a decree conformable to this opinion.

*Decree reversed.*