E. W. TILLOTSON *et al.*

*v.*

CAROLINE MITCHELL.

*Filed at Springfield September 27, 1884.*

1. CHANCERY—*closing the taking of testimony.* Until an order of court or agreement fixing the time to close the taking of evidence in a chancery suit, the parties will have the right to continue to take evidence at any time until the trial; and even such an order does not preclude the parties from introducing oral evidence on the hearing, unless otherwise agreed to by the parties. The making up of certain issues of fact for a jury to try, and an agreement that the jury would have found those issues for the complainant, does not operate to close the taking of further testimony.

2. SAME—*submitting issues to jury—when proper.* It is only where the evidence is conflicting as to the issues of fact in a chancery suit, that it is proper to submit such issues to a jury.

3. SAME—*effect of stipulation as to what would have been the finding of a jury.* Where it is stipulated in a chancery suit that a jury would have found certain issues of fact for the plaintiff, this will be an admission that there was evidence tending to justify such a finding, and, on error, such issues will be treated as having been so found; and such supposed finding will not be disturbed when not clearly against the weight of the evidence.

4. NOTICE BY POSSESSION—*as to occupant's rights to real estate.* It has been held that the actual, open and visible possession of a lot by one, even though his entry therein was as a tenant of another, or under him, is notice to the world of his rights and equities, whatever they are, and is sufficient to put a subsequent purchaser or incumbrancer of the former owner upon inquiry as to the occupant's rights acquired while so in possession.

5. A carpenter, employed by the owner of several lots to erect buildings on the same, was let into possession of one of the lots, and a building thereon used by him as a shop, and while so in the open and actual possession of the lot he bought the same of the owner in payment of what the latter owed him, and continued such possession afterward, during which time the owner gave a deed of trust upon it and other property. It was *held*, that his possession at the time was notice to the incumbrancer, of his purchase, the same as though his contract or deed were recorded.

6. ESTOPPEL—*omission of one in possession of land to disclose his rights—want of knowledge on his part as to the purpose of statements made to him.* A carpenter having purchased a lot from the owner in part payment of a debt owing him for his services in erecting buildings for his vendor, and

having taken possession of the same, agents of a party negotiating a loan to the former owner informed such purchaser that they were about making such a loan, and that they wanted to save back enough of the loan to pay the mechanics off, so that there would be no liens, making no reference, however, to a trust deed, or saying anything from which it could be implied that if one was to be given it should embrace his lot, and he replied that his vendor was an honest man, etc., and did not disclose his purchase, and the trust deed was given embracing his lot: *Held*, that such purchaser was not estopped from the assertion of his rights as against the party taking the trust deed.

7. An admission, to estop a party from asserting his purchase of the lot from a former owner, must be made with a full knowledge of the facts, or for the purpose of fraud; and such admission must be shown not by evidence which is loose, indefinite, inconclusive and unsatisfactory.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of McLean county; the Hon. OWEN T. REEVES, Judge, presiding.

Messrs. McNULTA & WELDON, for the appellants:

Possession, to afford constructive notice to a subsequent purchaser, must not be ambiguous, and such as may be misunderstood. *Patten* v. *Moore*, 32 N. H. 382; *Brown* v. *Volkenning*, 64 N. Y. 83.

The possession of Mitchell was equivocal in its character, and could not be easily distinguished from that of Winegardner, his grantee, and was not such as to give notice to the appellants of any equitable right in him, or to put them upon inquiry as to the rights of Mitchell as the owner of the fee. 3 Washburn on Real Prop. (3d ed.) 123; 4 Kent's Com. 203; *Chesterman* v. *Gardner*, 5 Johns. Ch. 29; *Cook* v. *Travis*, 20 N. Y. 400; *Governor* v. *Lynch*, 2 Paige, 200; *Freeman* v. *Freeman*, 43 N. Y. 34; *Grimestone* v. *Carter*, 3 Paige, 421; *Tuttle* v. *Jackson*, 6 Wend. 213; *Norcross* v. *Widgery*, 2 Mass. 508; *De Ruyter* v. *Trustees*, 2 Barb. Ch. 555; *Brice* v. *Brice*, 5 Barb. 533; *Ruck* v. *Holleway's Devisees*, 2 J. J. Marsh. 180; *Troup* v. *Hurlbut*, 10 Barb. 354; *Moyer* v. *Hinman*, 3 Kern. 180; *Webster* v. *Van Steenberg*, 46 Barb. 211; *Merrithew* v.

*Andrews,* 43 N. Y. 34; *Trustees* v. *Wheeler,* 59 Barb. 585; *Colby* v. *Kenneston,* 4 N. H. 262; *Patten* v. *Moore,* 32 id. 382; *Campbell* v. *Brackenbridge,* 8 Blackf. 471; *Beatie* v. *Butler,* 21 Mo. 313; *Coleman* v. *Barklew,* 3 Dutch. 357; *Holmes* v. *Stout,* 2 Stockt. 419, *McMeehan* v. *Griffing,* 3 Pick. 149; *Fassett* v. *Smith,* 23 N. Y. 252; *Emmons* v. *Murray,* 16 N. H. 385; *Smith* v. *Gule,* 31 Cal. 180; *Bele* v. *Twilight,* 3 N. Y. 500; *Wyatt* v. *Elam,* 23 Ga. 201; *White* v. *Wakefield,* 7 Sim. 401; *Rupert* v. *Mack,* 15 Ill. 540; *Truesdale* v. *Ford,* 37 id. 210; *Potts* v. *Cable,* 44 id. 103; *Stone* v. *Cook,* 79 id. 424.

Messrs. WILLIAMS, BURR & CAPEN, and Messrs. STEVENSON & EWING, for the appellee:

The agreement that the jury would have found the issues for the appellee, is an admission that they could rightfully find them so.

The purchaser of real estate is bound to inform himself as to what interest the party in possession claims; and it makes no difference whether he originally entered as a tenant, or otherwise. His possession is constructive notice of his rights in the premises, unless he fails to state them when inquired of. *Williams* v. *Brown,* 14 Ill. 200; *Small* v. *Stagg,* 95 id. 39; *Lyman* v. *Russell,* 45 id. 281; *DeWolf* v. *Pratt,* 42 id. 198; *White* v. *White,* 89 id. 460; *Hatch* v. *Bigelow,* 39 id. 556; *Reeves* v. *Ayers,* 38 id. 418; *Keys* v. *Test,* 33 id. 316; *Mathison* v. *Prescott,* 86 id. 493; *Phillips* v. *Pitts,* 78 id. 72; *Brown* v. *Gaffney,* 28 id. 149; *Lumbard* v. *Abbey,* 73 id. 177; *Prettyman* v. *Wilkey,* 19 id. 235; *Brooks* v. *Bruyn,* 18 id. 539; *McConnel* v. *Reed,* 4 Scam. 117; *Cabeen* v. *Breckenridge,* 38 id. 91; *Coari* v. *Olsen,* 91 id. 273; *Dyer* v. *Martin,* 4 Scam. 146; *Rupert* v. *Mark,* 15 Ill. 540; *Franz* v. *Orton,* 75 id. 100; *Bartling* v. *Brasuhn,* 102 id. 445; *Brainard* v. *Hudson,* 103 id. 218; *Conner* v. *Goodman,* 104 id. 365.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was a bill for an injunction, filed by appellee, against appellants, to restrain the sale of lot 4, block 1, Dimmit's first addition to the city of Bloomington. It appears that one W. H. Winegardner, of that city, was the owner of this and several other lots, which he undertook to improve. Abner Mitchell, a carpenter, had been employed to make extensive improvements upon Winegardner's residence property, and he entered into an arrangement with the latter to build, and did build for him, four large houses,—one of them on lot 5, adjoining lot 4, the property in controversy. He also built a house on the lot in controversy. It is claimed that Mitchell, by verbal agreement, purchased of Winegardner, lot 4, for $700, which was paid by indebtedness of Winegardner to him. Winegardner was to furnish the materials for all four buildings, and the labor in plastering, painting, tinning, etc., and Mitchell was to pay for the sum expended on his house, by his labor on the other three houses. It is claimed that this purchase and arrangement were made on the 6th day of March, 1875, and that Winegardner, on a settlement at the time the purchase was made, owed Mitchell about $900, for labor in erecting, previously, other buildings, $700 of which paid for the lot. In June, following, Winegardner applied to the Massachusetts Mutual Life Insurance Company for, and obtained, a loan of $3500, and gave a trust deed on lots 4 and 5 to secure its payment. The loan fell due in 1877, and Tillotson, the trustee, advertised the property for sale. Previous to that time Winegardner conveyed lot 4 to Mitchell, and he conveyed to his wife. On the advertisement, Mrs. Mitchell filed this bill, setting up her claim to the property, and prayed that the sale be enjoined. Afterwards, a motion was made to submit these questions of fact to a jury, which motion was allowed:

"*First*—Did, or did not, Abner Mitchell, in the month of March, 1875, purchase, by verbal contract, the property in controversy?

"*Second*—If you answer 'yes' to the first question, then answer the following question: Did, or did not, said Abner Mitchell, on or before the time of said purchase, pay Winegardner for said lot?

"*Fourth*—Did, or did not, said Abner Mitchell know, at and before Winegardner borrowed money of the company, it was, or was to be, secured by a mortgage on the property?"

The court, however, refused to submit a question as to whether Mitchell was in possession of the lot before and at the time the trust deed was executed.

Defendants stipulated, "that said questions be considered as having been submitted, and to the first the jury answer 'yes,' to the second the jury answer 'yes,' and to the last answer 'no,'—defendants reserving to themselves the same rights that they would have in case there had been an actual trial on a feigned issue out of chancery, and a verdict on said issues as above." On a hearing, the circuit court found for complainant, and decreed the relief sought. Defendants appealed to the Appellate Court for the Third District, where, on a hearing, the decree of the circuit court was affirmed, and they bring the record to this court by appeal.

We shall first dispose of a question of practice, before proceeding to discuss the merits of the case. It is insisted the court erred in admitting oral evidence on the hearing,—that as issues were made for trial by jury, and they were agreed as found for complainant, the court should have considered the evidence as closed, and no further evidence should have been received. There had been no order fixing the time to close the evidence. Until such an order is entered, the parties have the right to continue to take evidence at any time until and at the trial; and an order fixing the time to close the taking of evidence can not preclude the parties from

introducing oral evidence on the hearing, unless otherwise agreed to by the parties. That is a right secured them by the statute, and of which they can not be deprived without their consent. Appellee, therefore, but exercised her statutory right in introducing evidence as to Mitchell's possession, on the hearing.

We now come to consider the question whether Mitchell had such possession as was notice to a subsequent incumbrancer to put him on inquiry. All the issues of fact were submitted to the jury, because the evidence was conflicting. Had it been clear and satisfactory, it would not have been proper to submit the issues to the jury. By the stipulation it is conceded that a jury would find the issues for complainant, and that is an admission that there was evidence that tended to justify such a finding. In view of this admission we do not feel warranted in disturbing the supposed findings. If they were clearly against the weight of the evidence, it might, in the promotion of justice, be otherwise; but such is by no means the fact. There is sufficient evidence to support the findings, and as it is agreed the jury would have so found, we decline to disturb them.

In the case of *McConnel* v. *Reed*, 4 Scam. 117, it was said that in some cases possession is the foundation as well as the evidence of title, and under all circumstances it is such *indicia* of ownership as should induce a prudent man to examine into its source before purchasing. It was also said that the decisions are uniform that possession of land is notice to a purchaser, of the title held by the occupant, and this court, in a large number of cases, without any limitation or modification of the rule, has uniformly held that possession is notice of the occupant's title, equal to the record of his deed. In the case of *Dyer* v. *Martin*, 4 Scam. 146, it was said that possession by a person residing on the land is notice to all the world that he has some interest in the land, and any person purchasing it while that possession continues

takes title to the premises subject to that interest, whatever it may be. In *Williams* v. *Brown*, 14 Ill. 200, it was said Williams was in possession all the while. It was held that "this was constructive notice to her (the purchaser) of all the rights of the tenant in possession, as has been repeatedly held by this court. Nor did it make any difference that he took possession as tenant, and not as purchaser." In that case the tenant had furnished money to another to purchase the land for him, but the agent paid the money and took a bond for a conveyance to himself, and subsequently had the land conveyed to his mother-in-law. Brown, the trustee, had promised, verbally, to convey the land to Williams so soon as he could obtain a deed, but refused, and had the conveyance made as stated. The court held he was entitled to the land.

The doctrine that the actual possession of land is notice of the occupant's title, whether legal or equitable, has been repeatedly and uniformly announced by this court, and it would be supererogatory to refer to the cases, nor would it answer any useful purpose. To operate as notice in such cases, the possession must be actual,—not constructive,—open and visible. Was the possession in this case of that character? Immediately after his purchase, Mitchell erected a temporary structure on the lot, in which to place his tools and other articles. He remained in the possession and control of this structure until after the trust deed was executed. He was daily present on the land, controlling the labor of others and contributing his own in the erection of the building, before and after the trust deed was executed, until it was completed. Not only so, but he told all the workmen but one that the lot and house were his; and the same fact was known to a number of persons in the neighborhood. His possession was actual, open and visible, and did notify persons in the neighborhood that he claimed to own the premises. In fact, his possession is not disputed by appellants. They, however, claim that his possession was so equivocal in its

character as not to afford notice to or demand inquiry of any person. It is urged, that being a carpenter and engaged in the construction of the house on the lot, there was nothing to notify the public that he was not in possession merely as a carpenter and builder, as such persons usually have possession for that purpose, but was in as a purchaser; that carpenters and builders, when so in possession, are seldom in possession as owners, but simply for the purpose of pursuing their occupation, and such possession, even when it concurs with ownership, should not be held notice of claim of ownership. We have not been inclined in the past to make distinctions in reference to possession, so it is actual, open and visible. In the case of *Williams* v. *Brown, supra,* it was insisted that as complainant was in possession as a tenant, the purchaser was only chargeable with notice of his tenancy; but the court held the possession was notice of all his rights,—even of a verbal agreement for a conveyance of the land. In the case of *Coari* v. *Olsen,* 91 Ill. 273, in discussing this question, it was said: "But, although other courts have held the doctrine of notice by possession as subject to being materially modified by circumstances, this court has uniformly held that actual occupancy is equal to the record of the deed or other instrument under which the occupant claims, and a purchaser is bound to inquire by what right or title he holds. The purchaser takes the premises subject to that title or interest, whatever it may be." In this last case Olsen held, at the time the sale was made to Coari, the third story, only, of the building, under his unrecorded contract of purchase from Wakely. The second story was vacant, and the first story was occupied by a tenant of Wakely, the vendor, yet this was held such possession as was notice to Coari, and Olsen's purchase was enforced by compelling a conveyance from Wakely and the cancellation of Coari's contract for a conveyance. The possession in this case is manifestly as certain and unequivocal as it was in

that case. In this, Mitchell was in the actual possession of the whole lot.

We are unable, from the evidence, to say Mitchell was estopped by anything he said or did before the trust deed was executed. It is true that Tillotson and Wait testify that they saw Mitchell before the trust deed was executed, and informed him that they were about making a loan to Winegardner, and they wanted to save money back to pay the mechanics off, so there would be no mechanics' liens in the end. It will be observed that in this statement to him no reference is made to a deed of trust, or if it could be inferred that there was to be one taken, there is no statement as to the property that was to be embraced in it. Is it possible to hold that a man shall lose his land because he does not disclose his title in answer to such a statement as this? Surely, the doctrine of estoppel will never be carried to such a length.

Mitchell's reply, that "Winegardner is an honest man, and I wish we had a thousand such men," is urged to show that he knew the deed of trust was to embrace his lot. It seems that Mitchell was hard of hearing, and the reply would lead to the inference that he understood Tillotson and Wait as questioning Winegardner's intention to pay the mechanics, and it is far from showing that he understood at the time that the deed of trust was to embrace his lot. Wait says, "We went there to learn whether the property was subject to mechanics' liens," and they told Mitchell they wanted all the bills paid, so that they would not be liens. He does not say they told Mitchell that the money was to be loaned, in whole or in part, on this lot, as security. Tillotson says that he went to the building, and saw Mitchell at work on the house, about the first of June. "I told him we were making a loan on the premises for Winegardner." On what premises? He does not say he informed Mitchell the loan was to be on his lot. The evidence of these witnesses is loose, indefinite, inconclusive and unsatisfactory to establish an estoppel. An

admission, to have that effect, must be made with a full knowledge of the facts, or for the purpose of fraud, to bind a party. In this case we are unable to see that Mitchell said or did anything that precludes him or his grantee from asserting title to the lot.

We are unable to perceive any error in the record, and the decree of the Appellate Court is affirmed.

*Decree affirmed.*