# FIRST NATIONAL BANK OF PRINCETON
## V.
## ISAAC KURTZ, JR., AND ISAAC KURTZ, SR.

*Attachment—Fraudulent Conveyance within Two Years—Fraud in Fact —Construction—Executory Trust as Consideration for Conveyance—Possession as Notice—Instructions—Evidence—Practice.*

22  213
156s  32

1.   In an attachment proceeding in aid, the principal suit being on certain promissory notes executed by the defendants, the son as maker and the father as surety, it is *held:* That a conveyance by the father to a daughter and her husband was not fraudulent in fact; that the father did not know at the time that his son was financially embarrassed; that said conveyance was properly made to carry out the expressed wish of his deceased wife, and an understanding with the heirs in consideration of which they had conveyed the legal title to him, although said wish and understanding because resting in parol were not enforceable by legal process; that the consideration, which included the payment of certain sums to other heirs, was amply sufficient; that the trust, though void and ineffective under the Statute of Frauds, supports the transaction as an executed contract; that it is not an objection that the conveyance included the grantor's life estate, the sale of said estate being for its full value, and the proceeds being within the reach of creditors; that the facts do not constitute constructive fraud; that it is immaterial that the conveyance was to the daughter and her husband jointly; that her joinder in the former conveyance to the father does not affect her equitable title, the possession of herself and husband being notice of such title; that the making of one of the notes by the grantees payable to the wife of the junior defendant herein, was probably improper; and that the rulings of the trial court upon the instructions and the admissibility of evidence were substantially correct, except in one particular which worked no injury to the appellant.

2.   While fraud must generally be shown by circumstantial evidence, it is unsafe to infer it from slight and inconclusive circumstances.

3.   When the owner of land conveys it without consideration to be held in trust, and remains in possession, his possession is notice of his equitable title.

4.   It *seems* that the words " fraudulently conveyed or assigned his effects or a part thereof," in Sec. 1 of the Attachment Act, include cases of actual fraud only.

[Opinion filed January 10, 1887.]

APPEAL from the Circuit Court of Bureau County; the Hon. GEORGE W. STIPP, Judge, presiding.

Messrs. ECKELS & KYLE and HENDERSON & TRIMBLE, for appellant.

The general rule is that a voluntary conveyance as against existing creditors, is fraudulent in law and void. The true rule, by which the fraudulency or fairness of a voluntary conveyance is to be ascertained, is founded on the pecuniary ability of the grantor to make the donation without the least hazard to his creditors, or in any material degree lessening their then prospects of payment. And because every man must be just before he is generous, it is not essential that fraudulent intent should be shown; although in this case it has been most conclusively shown. Emerson v. Bemis, 69 Ill. 537; Nesbitt v. Digby, 13 Ill. 387; Phelps v. Curtis, 80 Ill. 109, 113; Jaffers v. Ancals, 91 Ill. 487, 492; Gould v. Steinburg, 84 Ill. 170.

As against his creditors a debtor can not convey all his property to another, reserving his own future support, or an annuity, out of it as a part of the consideration for such conveyance. Such a conveyance is fraudulent in law as to creditors because the law does not allow any form of contract or mode of disposing of property whereby the vendor secures to himself, to the exclusion of his creditors, the use of the same, or the use of his interest therein, beyond the specified exemptions of the statute. Annis v. Bonar, 86 Ill. 128; Robinson v. Stewart, 10 N. Y. 195; Goodrich v. Down, 6 Hill, 438; Jackson v. Parker, 9 Cow. 846; Stevens v. Dillman, 86 Ill. 233; Jones v. King, 86 Ill. 225; Moore v. Wood, 100 Ill. 145; Lawson v. Funk, 108 Ill. 502, 507.

Where a sale is made by a failing debtor, and it appears from the transaction that it was designed that the vendor should retain a secret use in the property, or have an annual income out of it, it must be condemned as fraudulent and void as to creditors. Power v. Alston, 93 Ill. 597; Bell v. Devore, 96 Ill. 217; Jones v. King, 86 Ill. 225; Lawson v. Funk, 108 Ill. 502, 507.

Messrs. KENDALL & LOVEJOY, for appellees.

It was not fraudulent for Isaac Kurtz, Sr., for the purpose of carrying out the wish of his deceased wife and the understanding upon which the legal title was conveyed to him, and before the levy of the attachment, to convey the interest of the children of Mrs. Lochman and her husband, with her consent, in consideration of Lochman paying $2,000 after the death of said Kurtz. Van Dorn v. Leeper, 95 Ill. 35; Sceders v. Allen, 98 Ill. 468; Phillips v. North, 77 Ill. 243; Tomlinson v. Matthews, 98 Ill. 178. It was not fraudulent for Isaac Kurtz, Sr., to sell and convey in good faith his li e estate to Mr. and Mrs. Lochman for a fair and reasonable price, payable annually, and the jury found that he did convey it in good faith and for a fair and reasonable price. Waddam v. Humphreys, 22 Ill. 661; Union Bank v. Toomer, 2 Hill, Ch. 27. Mrs Lochman after she signed the deed to her father remained in possession of the land, claiming it under the agreement of her father to convey to her; and after June, 1884, she and her husband were claiming under his agreement to convey his life estate. Their possession was notice of all their rights. Ford v. Marcall, 107 Ill. 136, 140; Tillotson v. Mitchell, 111 Ill. 518, 525; Coari v. Olsen, 91 Ill. 273, 280. It was the province of the jury to determine whether or not Isaac Kurtz, Sr., fraudulently conveyed the eighty acres to Mr. and Mrs. Lochman so as to hinder or delay his creditors; and their finding should be sustained by this court. Papineau v. Belgarde, 81 Ill. 61; Connelly v. People, 81 Ill. 379; C. & N. W. R. R. v. Ryan, 70 Ill. 211. To sustain an attachment a fraudulent *intent* must be shown to exist in making the conveyance. It is not enough to merely show that the effect of the conveyance was to hinder and delay creditors. Shove v. Farwell, 9 Ill. App. 256, 261.

BAKER, P. J. The First National Bank of Princeton, appellant herein, brought suit on the 19th day of February, 1885, in the Bureau Circuit Court, against Isaac Kurtz, Jr., and Isaac Kurtz, Sr., upon two promissory notes, one for $800, and the other for $1,500, executed by Isaac Kurtz,

Jr., as principal, and Isaac Kurtz Sr., as security, and the summons was served upon them on the 27th day of February, 1885. An affidavit was filed in the court, on this last mentioned date stating that the defendants and each of them had within two years next preceding the filing of the affidavit, fraudulently conveyed or assigned their effects or a part thereof so as to hinder and delay creditors; and thereupon an attachment writ in aid of the suit at law was issued and levied upon the W. ½ N. W. ¼ Sec. 3, T. 17 N., R. 8, E. of 4th Principal Meridian, in Bureau County, Illinois. as the property of said Isaac Kurtz, Sr., and served upon Thomas Lochman and Deborah W. Lochman as garnishees. Isaac Kurtz, Sr., interposed a plea traversing the facts stated in the affidavit upon which the attachment, as against him, issued; and a jury trial resulted in a verdict and judgment in favor of appellant and against both defendants for $2,480.80 and proper costs, in the principal suit, and in a verdict in favor of Isaac Kurtz, Sr., upon the issue formed in the attachment proceeding in aid, followed by a judgment that the attachment be quashed and that appellant pay the costs thereof.

Rachel Kurtz, wife of Isaac Kurtz, Sr., died in 1869, seized of the eighty acres of land attached in this case, and leaving as her heirs at law her children, Davis B. Kurtz, Edward T. Kurtz, Frances McMeen, Deborah W. Kurtz, (now Lochman) and Isaac Kurtz, Jr. She had executed no deed to the land, and had signed no declaration of trust in writing with reference thereto; and she made no will.

She did, however, on divers occasions. both long before and shortly preceding her death, state that she wanted her daughter Deborah W. Kurtz to have the north forty acres, upon which the dwelling house was situated; and also wanted her to have the south forty acres upon her paying $1,000 to her other daughter, Frances McMeen, and $1,000 to Isaac Kurtz, Jr.; and wanted her husband to have a life estate in the land. Said Deborah W. was the youngest daughter and the only child unmarried and living at home with the parents; and the other children had received $1,000 each from the father, while she had received nothing. After the death of Rachel,

his wife, Isaac Kurtz, Sr., who was ignorant the law cast upon him a life estate in the premises, was anxious to procure from the heirs a conveyance of the land and proposed they should execute to him a quit-claim deed therefor; this, several of them at first declined doing, on the ground it was not in accordance with the declared intention of their mother with reference to the disposition of the land; but upon the promise of the father that he would make provision for Deborah W. and would give her the forty acres the buildings were on, and the other forty acres on her paying the $2,000, they all joined in a quit-claim deed to him bearing date April 6, 1870. The nominal consideration of one dollar was stated in this deed, and no consideration was paid or given therefor to any of the children, except as arises out of the circumstances and promise above mentioned.

After the decease of her mother, said Deborah W. continued to live upon the premises with her father until her marriage with Thomas Lochman, in August, 1870; after that she and her husband lived there with her father until the second marriage of Isaac Kurtz, Sr., in 1875, when said Kurtz and his second wife went to live in a house on a lot owned by him, at Walnut, in Bureau County, and Thomas and Deborah Lochman remained on the farm, paying rent therefor.

In June, 1884, an arrangement was made between Isaac Kurtz, Sr., and Lochman and wife, whereby the former was to convey to them the land, and they were to execute three notes, one to Isaac Kurtz, Jr., for $1,000, payable at the death of Isaac Kurtz, Sr.; one for $1,000 to Frances McMeen, payable at the same time, and one of $300, payable annually to Isaac Kurtz, Sr., as long as he should live, for his life estate in the land.

Thomas Lochman and his father-in-law at once went to Princeton for the purpose of getting a lawyer to prepare the deed and papers, but the attorney told Kurtz, Sr., who was then over eighty-five years of age, that he was getting old and it was best to keep his farm in his own name. Thereupon the deed was not made, but on their way home Kurtz told Lochman to go on with the "improvements," and that he

would make the deed. After that said Lochman built a barn and put fencing on the land, at a cost of some $500, and August 4, 1884, insured the house, barn, etc., in his own name, for $3,000, and also paid the taxes of 1884 on the land.

Afterward, Isaac Kurtz, Sr., executed a deed to Thomas Lochman and Deborah W. Lochman for this real estate, which bore date February 9, 1885, was acknowledged on the 11th, delivered on the 12th, and filed for record on the 13th of the same month of February.

Upon delivery of the conveyance, a note for $1,000, payable at the death of Isaac Kurtz, Sr., was executed and delivered to Mrs. McMeen, a like note to Mary Kurtz, wife of Isaac Kurtz, Jr., and a joint contract of the grantees in the deed for the payment to Isaac Kurtz, Sr., of $150, semi-annually, first payment to be made June 1st, after date, second payment January 1st, after date, and so to continue in payments of $150 each successive June and January, so long as he should live; the obligation to cease at his death.

Isaac Kurtz, Jr., was a member of the firm of Kurtz & Wilson, and on the 16th day of February, 1885, and for some time prior thereto, both he and the firm were hopelessly insolvent, and on the last mentioned date the firm made an assignment for the benefit of creditors. His father was security for him, not only upon the indebtedness involved in this suit, but upon notes to other parties for very considerable amounts. The testimony makes it probable that the father and son saw each other almost or quite every day; but the father testified the son never told him anything with reference to his business, and that he did not know he was in failing circumstances when he made the deed; that it was his habit to loan him money when he asked for it, and to sign notes and papers when requested by him without looking at or asking about them, and that the son was indebted to him five or six hundred dollars.

There are numerous other facts and circumstances in proof, both upon the one side and the other, bearing more or less directly upon the merits of this controversy; but in the view we take of the case, it is deemed unnecessary now to specify them.

It is manifest that neither the declarations of Rachel Kurtz made while she was the owner of the land, nor the promises made by Isaac Kurtz, Sr., to the heirs at the time they executed the quit-claim deed to him and thereby vested him with title, could have the effect to create a trust for the benefit of Deborah W. Lochman that could be enforced in the courts, and for the simple reason that neither such declarations nor promises were witnessed by any writing signed by the party competent to declare such trust; and to otherwise hold would be in contravention of the provisions of the Statute of Frauds. This is not the question that arises upon this record, but it may be advisable hereafter to refer to some matters and deductions incident to the doctrine announced.

The principal claims made by appellant are:

*First,* That Isaac Kurtz, Sr., in making the deed dated February 9, 1885, to the Lochmans, was guilty of actual fraud;

*Second,* That the nature of the transaction was such as to make the execution of the deed a constructive fraud; and,

*Third,* That a conveyance of property which is only constructively fraudulent, that is, fraudulent as mere inference of law and without regard to the actual motives or intention of the party making such conveyance, is sufficient to sustain an attachment under the sixth specification of section one of the Attachment Act.

The jury found against appellant on the attachment issue, and must necessarily have found that the elder Kurtz was not guilty of fraud in fact and had no corrupt motive or fraudulent intent when he made the deed. We think the decided weight of the evidence supports their verdict in this respect. We are satisfied, after a careful examination of the testimony, that he did not know, at the time he executed the conveyance, that his son was financially embarrassed or about to fail; and that the motives that influenced him were a desire on his part to carry out the frequently expressed wishes of his deceased wife, redeem the promises he made to his children when they made the quit-claim deed to him, and perform the contract he had made with the Lochmans in the preceding June.

It will be noted that he was at the time in feeble health, and

very old. While fraud can seldom be proven by direct testimony and must generally be shown by circumstantial evidence, yet it is not safe to infer fraud from a few slight and wholly inconc'usive circumstances. The fact of the relation of the several parties is a circumstance to be regarded, but if unconnected with other facts, it is of little importance. The nearness in point of time of the date of the execution of the deed, to the dates on which the insolvent son made his several conveyances and the assignment, is also suspicious, but then the clear preponderance of the evidence is to the effect the father did not know these several instruments were either made or contemplated. It is true, one of the thousand-dollar notes was made payable to the wife of the son, instead of to the son himself, but then the evidence shows this was done by Ross without the knowledge or consent of the old man and in disregard of the instructions he had given; that the senior Kurtz, being sick and infirm, employed Ross to deliver the deed and write up the notes and get the signatures of the Lochmans thereto, and it will not do in this inquiry, in respect to the existence or non-existence of an actual fraudulent intent in the mind of said Kurtz, to say Ross was his agent in the matter and that the knowledge of Ross was his knowledge. Inadequate consideration is a badge of fraud; but we think the consideration for the conveyance of the property was amply sufficient, and especially so from the standpoint occupied by Kurtz, Sr., and that is the point of view from which this matter should be regarded. The trust reposed in him by the heirs of his dead wife, and predicated upon his express promises to make the deed, was not enforceable through judicial proceedings, but nevertheless was binding upon his conscience; and from his standpoint, he was invested with the absolute title to the land, yet he was equitably and really the owner of only a life estate therein, and his daughter Deborah was the equitable and real owner of the reversion, but charged with the payment at his death of $2,000 to some of the other heirs of his deceased wife; and moreover there was in his mind the contract of June with the Lochmans and the $500 they had expended for improvements and repairs.

But, it is urged, the conveyance included his life estate, and that was undoubtedly his own property, and was subject to the payment of his debts. It may be answered that he sold it, and for its full value; the fair rental value of the farm is shown by the evidence to be $300 a year, and no witness places it higher than $4 an acre, which would be $320 a year, and then, by the terms of his contract he is paid semi-annually instead of annually. Already $600 has become due to him by the terms of his contract, and by the Northampton life tables the gross value of his life estate at the time the deed was made was only $679.80. The contract of Thomas and Deborah Lochman is a valid obligation, but it is not a promissory note or other negotiable instrument, and it is readily within the reach of creditors by process of garnishment, and, we may add, the Lochmans were, as a matter of fact, actually garnished in this cause and before any payment was made.

We do not understand that it is fraudulent in a debtor to sell his property for full value and place that value in such condition as that his creditors may readily avail themselves of it.

Was there constructive fraud, or in other words, was the transaction a fraud *per se*, as a conclusion of law and regardless of motive? We think it was not. The supposed trusts were not fraudulent and vicious in and of themselves. It was just and right that the estate of Rachel Kurtz should be applied to the use and benefit of those she desired should have it, and it was equitable that Isaac Kurtz, Sr., should redeem the pledge he made when he received the legal title from the heirs without paying any consideration therefor, and gave them an assurance the land should be conveyed to Deborah W., charged with the $2,000.

True, this trust was void and ineffective under the Statute of Frauds and not enforceable by legal process, but such was the case merely for the reason the character of proof required by the statute to establish it could not be produced. Though void as an executory trust, yet when the deed was afterward made and delivered, the transaction became effective as an executed contract. In equity and good conscience the claim of Mrs.

Lochman was as meritorious as that of appellant: neither it nor any other creditor had a judgment or other lien upon the land, and in the absence of any actual fraud, no reason is perceived why she might not get the legal title in advance of creditors. Van Dorn v. Leeper, 95 Ill. 35; Seeders v. Allen, 98 Ill. 468. In Hovey v. Holcomb, 11 Ill. 660, it was held, if one honestly conveys property by an absolute deed to another, believing that it will be reconveyed or transferred as the first grantor may direct without intending to injure his creditors by conveyance, and where they would not be injured if the real purposes of the grantor should be carried out, as intended by him, such conveyance is not fraudulent as to creditors.

This case does not fall within the rule that was enforced in Moore v. Wood, 100 Ill. 451; Lawson v. Funk, 108 Ill. 502, and similar cases cited by appellant. In those cases there was an agreement on the part of the grantee to support or maintain the grantor, or the real estate was to be held wholly or in part in secret trust for the grantor. In this case the only real, beneficial and equitable interest the grantor had in the land was his life estate, and this he sold for its full value and retained that value within reach of his creditors; there was no trust retained in the premises conveyed, and the debtor had the beneficial enjoyment of no valuable right or property that could not be appropriated by those to whom he was indebted.

It is urged that as Deborah W. Lochman joined in the execution of the quit-claim deed which invested her father with title, and permitted him to treat the land as his own and incur debts on the faith of such ownership, the deed made by her father to her will be fraudulent and void as against such debts. It must be borne in mind that at and before the date of the quit-claim deed she lived upon the land and had title to an undivided interest therein; that after that date she continued to reside there and was as much in possession as she had been anterior thereto; and that after her father moved to Walnut she and her husband continued to occupy the premises, in the character of tenants of the father; and that continuously from the date of the quit-claim deed down to the time of the conveyance from her father, in February, 1885, she lived upon

the land, claiming an interest therein. In Ford v. Marcall, 107 Ill. 136, it was held that where the owner of land conveys it without any consideration to be held in trust, and remains all the time in the actual possession of the premises, such possession is notice of the equitable title of the grantor to the judgment creditors of the grantees and that such creditors acquire no title by levy and sale on execution. See also, White v. White, 89 Ill. 460.

The doctrine of Tillotson v. Mitchell, 111 Ill. 518, Coari v. Olsen, 91 Ill. 273, and several earlier cases, is that actual occupancy, even though as the tenant of another, is notice to the world of the rights and equities of the occupant, whatever they may be, and is sufficient to put all others upon inquiry. Upon these authorities our conclusion is, there is no merit in this point.

We think it is wholly immaterial that the conveyance made by the elder Kurtz was to Deborah Lochman and her husband, jointly, instead of to Deborah alone, as was originally contemplated and agreed. The arrangement as finally consummated is shown to be satisfactory to Deborah and the other parties interested and it can make no sort of difference to appellant whether the land was deeded to one or both of them.

Making one of the notes for $1,000 payable to the wife of Isaac Kurtz, Jr., instead of to him, was probably improper. There may, possibly, have been a valid reason for the change, as a husband may prefer his wife to the exclusion of other creditors; and if there was no valuable consideration for the substitution that was made, the money may probably be reached by the creditors.

It is unnecessary to determine whether Kurtz, Sr., is chargeable with the knowledge and act of Ross in respect to this note matter, for be that as it may, making the note payable to Mrs. Kurtz was not an assignment or conveyance of the property of Isaac Kurtz either fraudulent or otherwise.

In Shove v. Farwell, 9 Ill. App. 256, it was held by the Appellate Court for this district, that the fraudulent conveyance or assignment of property that will justify the issuance of a writ of attachment under section one of the Attachment

Act, must be fraud in fact as contradistinguished from a legal or constructive fraud.

We are inclined to the opinion that the words "fraudulently conveyed or assigned his effects, or a part thereof," found in said section, are intended to include cases of actual fraud only.

If the rule is held otherwise it would work a great hardship in very many cases of constructive fraud that will readily suggest themselves, in which the debtor has acted honestly and in the utmost good faith; and it can hardly be presumed it was the legislative intention that he should be punished for his want of foresight, or perhaps the fault or wrong of a third party, by making his property and credits liable to attachment on mesne process for a period of two years.

If the views we have expressed in respect to the law and the merits of this controversy are sound, then it is manifest the rulings of the trial court upon the instructions were not erroneous and it is unnecessary that the objections urged in that regard should be considered in detail.

A number of points are made under the assignments of error for admitting improper evidence and excluding competent testimony. Most of the rulings of the court with reference to the admissibility of evidence, we think were right. It was improper, however, to permit Isaac Kurtz, Sr., to testify to conversations he had with his deceased wife, Rachel, during coverture; but as this evidence was merely cumulative and covered the same matters that were testified to by numerous other witnesses, and there was no conflict of evidence in regard thereto, it is evident the action of the court worked no injury.

Upon a careful examination of the record we find no such manifest error therein as requires a reversal of the judgment of the Circuit Court, and that judgment is therefore affirmed.

*Affirmed.*